Judge Stites
delivered the opinion of the Court.
At the November term, 1855, of the McCracken circuit court, John Graham was tried and convicted of the murder of his wife.
The defense relied on by the prisoner was insanity at the time of the commission of the act, and some evidence was introduced in support of that defense. After the evidence was closed, the prisoner’s counsel moved the following instruction: “That if the jury believed from the evidence that there was a rational doubt growing out of the evidence, as to whether Graham was insane, or non compos mentis, at the time he committed the homicide, then they should give the prisoner the benefit of that doubt, and acquit him.”
This instruction was refused, and an exception taken by the prisoner’s counsel, who then moved the court to instruct the jury upon the whole law of the case; and thereupon the court gave the following instructions :
“1st. The court instruct the jury that if they believe from the evidence that Graham killed the deceased, they must find him guilty of murder, unless they believe from the evidence that at the time he did the act he was laboring under insanity of mind.
“2d. That if they believe from the evidence Graham did kill his wife, and that he was laboring under insanity on the subject of love and jealousy, yet if they believe from the evidence he had sufficient reason to know that he was doing wrong and would be liable to punishment, and that he had sufficient power to control his actions and -refrain from killing *592 her, the law is against him, and they must find him guilty.
“ 3d. The court instruct the jury that the law presumes every man to be sane until the contrary is shown by the evidence; and before the prisoner can be excused for killing the deceased on the plea of insanity, the jury must be satisfied from the evidence that the accused was laboring under such a defect of reason as not to know the nature and quality of murder; or if he did know it, that he did not know to commit murder was wrong,
“4th. That the true test of responsibility is whether the accused had sufficient reason to know right from wrong, and whether or not he had a sufficient power of control to govern his actions. That if they should believe from the evidence he was a monomaniac, yet if they should believe from the evidence he knew it was wrong to kill, and had sufficient power of control to govern his actions, and to refrain from committing the homicide, then the law is against him, and they must find him guilty.
“5th. That if they have a rational doubt as to whether said case is murder or manslaughter, they must find him guilty of the latter as the lesser offense ; and if they have such rational doubt as to his guilt or innocence, they must acquit him,
“6th. That a rational doubt is one growing out of the evidence, and not a mere chimera existing in the juror’s mind; and to acquit on mere light and trivial doubts existing in the juror’s mind, and not growing out of the evidence, tends to the encouragement of malefactors, is detrimental to the best interests of society, and a virtual violation of the juror’s oath.”
And after the instructions were read over to the jury, the court inquired if there was any other point upon which an instruction was desired, and none was requested; but an exception was taken to each of the foregoing.
The jury having found the prisoner guilty, and the *593 circuit eourt having refused a new trial, he has brought the case up by appeal.
In criminal cases the presumption is, that the accused is innocent until he is proved guilty; but if insanity be relied on as an excuse for a felony, it is necessary, to authorize an acquittal, that the jury be satisfied that the accused was insane — the law presuming all men to be sane until the contrary is shown. (Law Lib., ml. 4, 49; 8 Scott’s N. R., 595; Wharton’s Crim. Law, 91; 7 Metcalf, 500; 1 ZabrisMe’s New Jersey Reports.)
*593 The only question for consideration presented by the record, is the propriety of the refusal of the instruction asked for by the prisoner, and granting of others in lieu thereof.
It is earnestly contended in behalf of the appellant, and that is the main ground relied on for reversal, that the humane principle adopted in favor of life, which forbids a conviction whilst there is a rational doubt of guilt, has been violated in this case, by withholding from the jury the instruction asked for, and telling them, in the third instruction granted, that before they could acquit upon the ground of insanity, they must be satisfied that the accused was insane when he committed the homicide.
The importance of the case to the appellant haB induced a thorough examination of the authorities, within our reach, bearing upon the question, and after full consideration, we feel convinced, from the unbroken current of adjudications upon the subject, as well as from the reason of the rule, that it has not been impinged upon, and that no error was committed by the circuit court, of which the appellant can justly complain.
The rule in question is founded upon the benign presumption of law in favor of innocence until the contrary is satisfactorily established, a presumption which continues in force in behalf of the accused, and remains his shield and protection, as long as a rational doubt exists as to his guilt. To the benefit of this presumption he is always entitled, and it has been extended to the prisoner in this case, for the jury are told in the 5th instruction, that “if they have such rational doubt as to his guilt or innocence, they must acquit him.”
This presumption of the law in favor of innocence, is alike essential to the safety of the individual citizen and the security of society, and is universally recognized in all criminal and penal cases.— *594 But there are other legal presumptions alike important, and indispensable to the well-being and safety of society, and as necessary in their application in criminal cases. Among these is the presumption of sanity. Every man is presumed to be sane, and accountable, as such, for the commission of crime.— This presumption is as necessary and universal in its application in criminal cases as the presumption of innocence. The same amount of proof is required to rebut the one as the other. And when, as here, a party has committed a homicide, and endeavors to shield himself from the consequences of his act, by a plea of insanity, the law demands of him such evidence in support of that defense as will satisfy the jury that when he committed the act he was insane, and, as an insane being, not responsible for his acts.
This rule is founded in wise policy, and is obviously necessary for the protection of society, as much so as that which requires satisfactory evidence to rebut the presumption of innocence. Besides the character of the presumption, its necessary operation in almost every transaction of life, and its almost universal application in civil as well as criminal cases, there are other cogent reasons for this requisition of clear and satisfactory evidence in support of a defense in criminal cases grounded alone upon insanity. In ordinary defenses, such as self-defense, want of malice, sudden heat and passion, die., when by reason of the killing the burthen of proof rests upon the accused to rebut the legal presumption of malice, the facts relied on are usually a part of the transaction, or so directly connected with it, and so simple and few, that they are readily comprehended and appreciated by a jury, and no jury will convict in such cases, whilst a rational doubt is entertained as to the reality and merit of the defense relied on, notwithstanding the burthen of proof may be, by legal presumptions, cast upon the accused.
But the plea of insanity is peculiarly liable to abuse. It can be so easily concocted, and facts, ad *595 missible as evidence in its support, so readily manufactured by the accused. The latitude of inquiry in such cases is almost boundless. It does not, as other defenses, depend upon the proof of facts comprehensible to ordinary minds, and connected remotely or immediately with the transaction under investigation, but in its support facts having no connexion with the transaction, only so far as they may tend to show general or previous insanity of the accused, but happening long anterior to the commission of the offense for which he was tried, and the opinions of learned and scientific men upon such facts, are admissible as evidence. It not unfrequently occurs that plea is resorted to as a last extremity, with a view of introducing under the latitudinous range of inquiry, a multitude of facts and opinions not directly relevant, but strictly admissible, to produce confusion and doubt in the minds of jurors, and interpose, thereby, obstacles to the attainment of just verdicts. The only safe rule in such cases is to require in support of such defense satisfactory evidence that at the time of the commission of the act the party accused was insane. Less than that ought not to suffice, nor vpith less is the law content.
This principle has been recognized in England and America, in most of the leading cases, since the time of Sir Matthew Hale.
On the trial of Billingham for the murder of Mr. Percival, where the defense relied on was insanity, Lord Mansfield said: “The law in such cases is extremely clear. If a man is deprived of all power of reasoning, so as not to distinguish whether it was right or wrong to commit the most wicked or the most innocent transaction, he could not certainly commit an act against the law. Such a man, so destitute of all power of reasoning, could have no intention at all. In order, however, to support this defense, it ought to be proved by the most distinct and unquestionable evidence that the criminal was incapable of judging between right and wrong.”— *596 (Winslow on Plea of Insanity, Law Library, ml. 42, p. 4.)
The rule seems to have been approved by all the English judges as late as 1843.
The acquittal of McNoughton for the murder of Mr. Drummond, on the ground of insanity, gave rise to an animated discussion in the House of Lords, who ordered various interrogatories to be put to the judges as to the law arising on the plea of insanity imcriminal cases, and, among others, the following : “In what terms ought the question to be submitted to life jury as to the prisoner’s state of mind at the time the act was committed ?” To this they reply: “We have to submit our opinion to be, that in all cases the jury ought to be told, that ei*^ man is presumed to be sane, and to possess a sufficient degree of reason to be responsible for his acts, until the contrary be proved to their satisfaction; and that, to establish a defense upon the ground of insanity, it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or if he did know, he did not know that he was doing wrong.” (8th Scott, N. R., 595; Wharton’s Crim. Law, 91.)
In Massachusetts, on the trial of Rogers for murder, the plea of insanity was set up. It was held by the supreme court, that insanity being in the nature of confession and avoidance, must be satisfactorily shown to entitle the jury to acquit on that ground. (Com'th vs. Rogers, 7 Metcalfe, 500.)
In New Jersey, it was holden by the supreme court in Spencer’s case, “that the evidence of the prisoner’s insanity at the time of the act, ought to be clear and satisfactory.” And the chief justice, in delivering the opinion of the court, said; “The proof of insanity at the time of committing the act, ought to be as clear and satisfactory, in order to acquit him on the ground of insanity, as the proof of commit *597 ting the act ought to be, to find a sane man guilty.” (1 Zabriskie’s New Jersey Reports.)
This principle of requiring clear and satisfactory evidence in support of the defense of insanity, thus apears to be recognized and adopted in England and this country, and not to have been regarded as conflicting with the principle which deems every man innocent until the contrary is shown beyond a rational doubt. It is based upon the legal and obviously necessary presumption of sanity; and, in our opinion, it is a safe rule, founded in reason and good policy, sanctioned by experience and authority, and should not be departed from.
We are of opinion, therefore, that the circuit court did not err to appellant’s prejudice in refusing the instruction asked, and in granting the third instruction. Without noticing in detail the other instructions, we deem it sufficient to say that they are as favorable to appellant as the law of the case permitted, and that no error was committed to his prejudice in granting them.
With the facts of the case we have nothing to do. The jurisdiction of this court is limited in such cases to questions of law arising and saved by exceptions during the progress of the case. Beyond that it does not reach.
There being, then, in our opinion, no error in the record, to the appellant’s prejudice, the judgment of the circuit court cannot be disturbed, but must stand.
Wherefore, the judgment is affirmed.