JUDGE HINES
delivered the opinion op the court.
Appellant, charged with willful murder, was tried, convicted of voluntary manslaughter, and sentenced to the penitentiary for sixteen years, and from that judgment he appeals.
The substance of the proof is, that appellant tendered money and demanded a drink at the bar of one Jacob, and that Jacob and his bar-tender, Snyder, both refused to let appellant have any liquor, Snyder assigning as a reason that the father of appellant had so requested. Some harsh language passed between the parties, when appellant drew a pistol and snapped it at Jacob, and on its failing to fire, appellant, with a declaration to the effect that he would get a pistol that would kill, went a short distance to his dwelling and in a few minutes returned with another pistol, which he presented and snapped at Jacob. At this point Snyder called to an officer to arrest appellant, and without further provocation he turned and shot Snyder, from the effects of which he died within a few days. The principal defense was insanity, the evidence to support which will be referred to in another part of this opinion.
Much of the argument of counsel for appellant was directed to the alleged errors of the court below, in permitting the jury to view the place of killing, without the presence of the prisoner and without having the place pointed out to the jury by the court, or by any one designated by the court; and in permitting the jury to separate during the trial, to receive evidence out of court and in the absence of appellant. These points, as well as several others relied upon in the argument, *401 can not be considered by this court, because no objection was made to the action of the court until the motion for a new trial was made. (Terrell v. Commonwealth, 13 Bush, 246.)
In Kennedy v. Commonwealth, ante page 340; Frazier v. Commonwealth, MS. opinion, November 21, 1878; and in several other cases decided at the present term, we have held that an objection first made in motion and grounds for new trial can not be considered by this court. Of the fifteen grounds relied upon on the motion for new trial, we can examine only the action of the court in the admission and rejection of evidence, and the giving and refusing of instructions.
The following instruction given at the instance of the Commonwealth is complained of, to wit:
“The court instructs the jury that the law presumes every man to be sane until the contrary is shown by the evidence, and before the prisoner can be excused for killing the deceased on the plea of insanity the jury must be satisfied from the evidence that the accused was laboring under such a • defect of reason as not to know the nature and quality of murder, or if he did know it, that he did not know to commit murder was wrong. That the true test of responsibility is, whether the accused had sufficient reason to know right from wrong, and whether or not he had sufficient will-power of control to govern his actions.”
Counsel earnestly and ably argues that the word “satisfied,” used in the instruction, was misleading and prejudicial to appellant, because it required the jury to disregard the plea of insanity, unless the evidence was such as to free their minds from doubt as to whether it was of such a character as under the instructions would authorize an acquittal; that they were told by that expression that the existence of a reasonable doubt as to the sanity or insanity of the appellant would not justify an acquittal upon the ground of insanity. That in *402 struction standing alone is probably subject to that objection, but when taken in connection with the other instructions it does not appear that the jury could have been misled by it.
By the second instruction given at the instance of the counsel for appellant the jury is told that it is their duty to consider every fact or circumstance admitted in evidence, and that if, upon the whole case, they shall entertain a reasonable doubt as to whether any fact or circumstance necessary or essential to the conclusion of the guilt of the accused has been proved, they should give the accused the benefit of that doubt.
The third instruction given at the instance of appellant’s counsel is as follows:
“The court instructs the jury that if, upon all the evidence before them, they shall entertain a reasonable doubt as to whether the accused, at the time and place he shot and killed Snyder, was of sane mind, they should give him the benefit of that doubt, and acquit him.” This instruction is more favorable to appellant than is authorized by the law.
If the instructions given were numerous, prolix, or involved it might be said, with the appearance of plausibility, that the objection indicated to the fifth instruction was such as would authorize the court to infer that the jury might have been misled by it. But such is not the case. They are drawn with much more than the usual care bestowed upon instructions in criminal cases, and present the law in as brief and direct a manner as could well be done, giving to the accused the full benefit of the law applicable to the defense of insanity, whether it be intellectual or moral insanity. (Graham v. Commonwealth, 16 B. Mon. 587.)
While the evidence certainly strongly tends to show that the accused was afflicted with a homicidal mania, and that it is hereditary, the question of the sufficiency and weight of evidence to establish the defense was a question exclusively for the jury, a matter not to be inquired into by this court.
*403 Some seventy witnesses were examined in the case, and the larger number of them, experts and non-experts, were permitted to express their opinions as to the sanity of the appellant, and of the testimony of the non-experts, excepted to by counsel for appellant, is the following:
H. P. Clau said that he had known the appellant for eighteen years; lived within a half a mile of him; sometimes saw him as often as two or three times a week; sold him goods about eight years before the killing; had since then loaned him small amounts of money, and thought him sane; noticed some peculiarity in him, but thought him drunk; never saw him drink; never associated with him, and am twice as old as he is.
D. P. Guin said: Have known the accused since a boy, but have not been with him much; had but little to do with him. From observation of his conduct and acts, I had no reason to believe him insane, and never heard any thing of it. My attention was not called to it. He had many peculiarities.
J. J. Brown said: Am not related to the accused; have known him since 1849; had business with him and frequent chats. From habits, conduct, and chats I never thought him insane; have seen peculiarities in members of his family, but never had any question as to his sanity. I am not an expert nor a doctor. My attention was never called to the accused’s insanity.
R. H. Monow said: Have known the accused all his life, and have always thought him sane. I am no doctor, nor was my attention ever called to his insanity.
Rod Perry said: Have known the accused for twenty years; not intimate with him; never heard his sanity called in question. He was different from the other members of his family in disposition. I never studied insanity.
Judia Long: I have known the accused and his family for thirty-five years. From his manner, habits, and my personal knowledge of him I think him as sane as any one. When *404 under the influence of liquor, or when I thought him to be, he would laugh, sing, and swear.
Dr. H. J. Abbett: Have known the accused ten or fifteen years; never made it my business to observe his habits; conversed with him a few moments before the killing, and thought him sane; never heard his sanity questioned; have had no experience in treating insanity.
Ben. F. Griffin: Have known the accused since he was a boy; saw him but seldom, and never heard his sanity questioned.
Many other witnesses were examined who testified substantially as the above, but we deem it unnecessary to give their statements, as these are sufficient to dispose of the objections made by counsel. The question is, When, if at all, will non-experts be permitted to state in evidence an opinion as to sanity ?
This court, in Hunt’s heirs v. Hunt, 3 B. Mon. 577, expressed the opinion that such evidence was incompetent unless the witness stated the facts upon which the opinion was based, but did not undertake to say what facts would be necessary to render the expression of an opinion competent.
The opinion in Hardy v. Morrill, 56 N. H. 232, decided in 1875, is one of the most exhaustive and satisfactory reviews of the question that we have met.- The opinion was delivered by Chief Justice Foster. It is there said, page 241:
“ But without reference to any recognized rule or principle, all concede the admissibility of the opinions of non-professional men upon a great variety of unscientific questions arising every day, and in every judicial inquiry. These are questions of identity, handwriting, quantity, value, length, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness, and health; questions also concerning various mental and moral caprices of humanity, such as disposition and temper, anger, fear, excitement, intoxication, ve *405 racity, general character, and particular phases of .character, and other conditions and things, both moral and physical, too numerous to mention.”
“All evidence is opinion merely, unless you choose to call it fact and knowledge, as discovered by and manifested to the observation of the witness.”
It is there said that no general rule for the admission or rejection of such evidence can be safely stated, but that the nearest is:
“ Opinions of witnesses derived from, observation are admissible in evidence, when, from the nature of the subject under investigation, no better evidence can be obtained. No harm can result from such a rule properly applied. It opens the door for the reception of important truths, which would otherwise be excluded, while at the same time the test of cross-examination, disclosing the witness’s means of knowledge, and his intelligence, judgment, and honesty, restrain the force of the evidence within reasonable limits, by enabling the jury to form a due estimate of its weight and value.”
Exactly what is meant by the expression in some cases, when such evidence has been admitted, that “ the witness must detail the facts upon which the opinion is based,” we do not find explained. If the admissibility of the opinion as evidence must depend upon the facts from which it is formed, it is manifest that there is a question for the court antecedent to its introduction, and that to promulgate a general rule, as to the amount and quality of the evidence that should satisfy the court in every case, would be impossible. The court must be satisfied that the witness has had an opportunity, by association and observation, to form an opinion as to the sanity of the person in reference to whom he is to speak; but, as to the extent and character of the evidence, no better rule can be established than to leave it within the discretion of the court, as in the case of opinions given in evidence as to *406 handwrite. It must vary with the circumstances of each case, and by these circumstances the jury must determine for themselves the weight to which the opinion may be entitled.
It is not intended that the admissibility of the evidence shall be made to depend upon the ability of the witness to state specific facts, from which the jury may, independent of the opinion of the witness, draw a conclusion of sanity or insanity, for it is the competency of the opinion of the witness that is the subject of inquiry. The ability of the witness to detail certain facts which are in themselves substantive evidence of the condition of the mind, may add very greatly to the weight of the opinion given in evidence, but they will not of necessity affect the question of competency. One of the main reasons for permitting such evidence is that the facts and circumstances which go to form the opinion in the mind of the witness can not be reproduced and made palpable in the concrete to the jury. Common observation teaches us that mind and character manifest themselves through subtle mediums of communication that can not be made tangible in all cases to the understandings of others, even by the most studied and powerful use of language. (Wharton on Evidence, sec. 451, and authorities there cited.)
An eye may menace, it may plead, it may languish with love, it may sparkle with mirth, it may manifest intellectual power, it may show idiocy or insanity, and while these several manifestations may be as patent to the mind of the observer as any material substance could be, and he may be as conscious of the condition of the mind, character, or emotion indicated by them as he is of his own existence, yet the probabilities are that the most skillful word - painter would utterly fail in an attempt to make these evidences substantive and tangible to another. The same may be said of the impression one gathers from the tones of the human voice, from the touch of a hand, the lines and contour of a face. These, and a great number *407 of other illustrations that might be given, show that in all such matters the admission, in evidence, of opinions is absolutely essential to a proper administration of justice and the development of truth. It is competent because it is the best evidence of which the subject is susceptible.
Those who have had any thing like an extensive practice of law know how unreliable and worthless is the evidence of the average expert. Often the opinion is honestly formed and expressed to suit some pet theory that has no foundation in fact or experience, and sometimes it occurs that an over-weening desire to place a rival practitioner in an unfavorable light before the jury and the local public, leads the expert to the expression of an opinion that is not the result of observation and experience, and does not correspond with the deduction that should be made from the facts. Frequently such persons are called from a distance to express an opinion after a momentary examination, or an opinion based upon a hypothetical case imperfectly stated. It is not reasonable to suppose that such an opinion of an expert would be entitled to as much weight as that of an intelligent non-professional person who had for many years been an intimate associate of the person in reference to whose mind he was called to speak; or, to say the least, there appears no reason why the opinion of such an expert should go to the jury and that of the non-professional be excluded. The evidence of the one or the other will be entitled to consideration in proportion to his intelligence and opportunities for forming an opinion, and the juries may be safely intrusted with the duty of comparing and weighing them.
Wherefore the judgment is affirmed.