*Collins & Fenley, for appellant.*

*O'Hara & Bryan, for appellee.*

---

M. S. STEVENSON *v.* E. B. STEVENSON, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—674, 680.]

**Protection of Mental Incompetents.**

Where one is shown to be mentally incompetent to care for himself and his estate, he is as much entitled to the protection and care of a court of equity as is one who is technically a lunatic, and this protection may be secured upon the petition of next friends.

**Instructions.**

An instruction, in a case to enjoin one mentally deficient from wasting his property, that if the person could not prudently manage his estate then the jury must find against him, is not correct, for it is a fact that many persons of unimpaired intellects do not manage their estates profitably.

In a trial of a proceeding instituted by children to enjoin a parent from disposing of his estate and asking for the appointment of a committee for him on the ground of mental imbecility produced by old age, disease and the excessive use of intoxicants, an instruction is correct charging that if the jury believe from the evidence that the parent by reason of the infirmities of age or the excessive use

of liquor, or disease, is not possessed of capacity adequate to the reasonably prudential management and control of such property, with safety to his own interests and the just and lawful demands of his family, they must find defendant not capable of exercising dominion over his property.

APPEAL FROM LOGAN CIRCUIT COURT.

March 23, 1886.

OPINION BY JUDGE HOLT:

All of the children of the appellee, M. S. Stevenson, ten in number, brought this action in equity enjoining him from disposing of his estate, and asking that a committee for him be appointed upon the ground of mental imbecility produced by old age, disease and the excessive use of intoxicating drink.

The petition shows that all of the children were adults when it was filed but one, who sues by his next friend and brother, who, as is shown by the pleading, was then a resident of Texas. The civil code does not permit a nonresident to sue as next friend, and requires a nonresident plaintiff to give bond for costs. It is urged that none of the plaintiffs, save the infant, had any direct interest in the property or the object of the suit; and that therefore the motion of the appellant to compel the appellees to give security for cost, as well as the demurrer to the petition, should have been sustained. The demurrer was a general one only; and therefore if it be conceded that the appellees, save the infant, could not maintain the action, yet the objection that the next friend was a nonresident could not be thus made available; but were this not so, if the adult children had the right to maintain it then said motion, as well as the demurrer, was properly overruled.

In an early period of English judicial history the chancellor exercised jurisdiction over the persons and estates of lunatics and idiots. The form of proceeding was by petition to him, which might be filed by any creditor, relation or friend, praying for a commission of lunacy or idiocy, and thereupon the proper writ for an inquisition would issue. Originally this power was not held to embrace a case of imbecility falling short of lunacy; but the current of modern authority is otherwise, and it is sustained by every dictate of reason. The unfortunate imbecile is as likely to be de-

frauded of his estate and reduced to poverty as the lunatic or infant. The one can as easily be made the subject of fraud as the other; and the power to protect all of them has not only been assumed and exercised by our courts of equity, but sanctioned by legislative enactment. Gen. Stat. 1883, ch. 53, art. 1, § 1.

The exercise of it was expressly affirmed in *Shaw v. Dixon,* 6 Bush (Ky.) 644, where it was held that one who is mentally incompetent to care for himself and his estate is as much entitled to the protection and care of a court of equity as is one who is technically a lunatic, and that it may be secured upon the petition of next friends. To refuse it upon the application of the children of one so unfortunate would indeed be in violation of the plainest natural justice. Certainly if anyone is interested in the care and support of a father it is his child; and if a court of equity would not hear it in behalf of a father, to whom would it listen? The infant child of the appellant was a proper but not a necessary party plaintiff; and it follows from what we have already said that if the action had been dismissed as to him it could have proceeded in the name of the other appellees.

In this instance no objection was made to the trial out of chancery of the issue of soundness or infirmity of mind. It is urged, however, that the jury were substantially instructed that if the appellant could not prudently manage his estate, then they must find against him. If this be true, then of course the verdict can not be sustained, because many persons with unimpaired minds do not manage their estates profitably; but we do not think that the objection is well founded. The instruction reads thus: "On motion of plaintiffs the court instructs the jury that the question submitted to them is not whether the defendant is a lunatic or an idiot, as those words are defined by law, but whether he is a person of unsound mind, in the sense of not having sufficient mind to manage and control with ordinary prudence and judgment an estate of the size, character and value of the one he is shown by the evidence in the case to own; and if they shall believe from the evidence that the said M. S. Stevenson by reason of the infirmities of age or the excessive use of alcoholic liquors, or disease, is not possessed of capacity adequate to the reasonably prudential management and control of such property, with safety to his own interests and the just and lawful demands of his family, they must

find defendant not capable of exercising dominion over his property." The jury could not well have understood this instruction otherwise than as submitting to them the question whether from infirmity of mind the appellant was unable to manage his estate.

The court properly refused the first instruction asked by the appellant, because it, in this, a civil cause, required the jury to find for him unless they believed "beyond a reasonable doubt" from the evidence that he was incompetent to manage and control his estate.

Counsel seem, however, to mainly rely for a reversal upon the refusal of the court to give the second instruction asked by the appellee. The court further instructs the jury that the opinions of witnesses who have had opportunities to know the condition of defendant's mind by association with him are as capable of judging of defendant's mental capacity as experts are, and that this evidence should be entitled to as much weight. The opinions of nonprofessional witnesses or those who are not experts are admissible in evidence as to the mental condition of a person when by association and observation they have had an opportunity to form them. *Brown v. Commonwealth,* 14 Bush (Ky.) 398. But it is the province of the jury to judge of the weight of the evidence; and the aim of this instruction was to compel them to give as much weight to the testimony of the nonexperts as the professional witnesses. This very likely would have been misleading. As well might they have been told to give it more or not as much weight. All of the evidence was before the jury for their consideration; and it would have been improper for the court by instruction to have regulated the influence it should have had with them in reaching a conclusion.

Judgment *affirmed.*

*W. W. Lyles,* for appellant.

*Browder & Edwards,* for appellees.