CASE 65—INDICTMENT FOR MURDER—October 12.

# Portwood v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. EVIDENCE—STATEMENTS OF THE DEFENDANT SHOWING MOTIVE.— It was not error to permit the Commonwealth to prove a statement made by the accused a few hours after he had been put in jail tending to show the defendant's motive for the commission of the crime, it appearing that such statement was voluntarily made without influence or constraint of either threats or promise.

2. SAME—INSTRUCTIONS—INSANITY.—It was not error in the trial court to refuse to instruct the jury that before they could convict they must believe to the exclusion of a reasonable doubt that the accused was at the time he committed the act of sound mind.

3. SAME.—The jury was properly instructed that if at the time the defendant shot Perkins, if he did shoot him, he did not have mental capacity sufficient to enable him to know and understand that it was wrong to shoot said Perkins, he—the defendant—was of unsound mind. Or, if at the time the defendant shot Perkins, if he did shoot him, he was prompted to do such shooting by an impulse resulting from a diseased mind of such violence that it overcame the will of the defendant and constrained him to shoot the said Perkins when he did not wish to do so, the defendant was of unsound mind. If, however, at the time the defendant shot Perkins, if he did shoot him, he—the defendant—had mental capacity sufficient to enable him to know right from wrong and will power sufficient to enable him to choose between shooting and refraining from shooting, then the defendant was of sound mind. Or, if the defendant at the time he shot Richard Perkins, if he did shoot him, had mental capacity sufficient to enable him to know right from wrong and if his mind was free from disease, then no impulse to shoot said Perkins no matter how violent and no matter how completely it dominated the will of the defendant, was unsoundness of mind.

GEORGE DENNY FOR APPELLANT.

1. It was the duty of the court to have impaneled a jury to inquire into the question of sanity or insanity of the defendant. Crim. Code, secs. 156-7.

2. It was error to admit the statements made by Portwood to Cromwell, a newspaper correspondent, because he was led to make such statement by Cromwell's assertion that he had a statement from the other side.

3. It was error to exclude from the jury the statement of Mrs. Rogers made some time before the killing that she believed that he, the defendant, would soon have to go to the lunatic asylum.

4. Soundness of mind is an essential ingredient in the crime of murder and the jury should be instructed that they should believe the soundness of the defendant's mind to the exclu-

[32]

Portwood v. Commonwealth.

sion of a reasonable doubt. Brown v. Com., 14 Bush, 398; Smith v. Com., 13 Ky. Law Rep., 612; Black. Com., Book 4, s. p., 196; Dove v. State, 3 Heisk, 348 (Tenn Reps.); Hopps v. People, 31 Ill., 385; State v. Crawford, 11 Kan., 32; Cunningham v. State, 56 Miss., 269; s. c. 31 Am. R., 360; Polk v. State,. 19, Ind., 170; Stevens v. State, 31 Ind., 485.

W. S. TAYLOR, ATTORNEY-GENERAL, FOR APPELLEE, RESTED THE. CASE UPON THE ORAL ARGUMENT, WITHOUT BRIEF.

GEORGE DENNY FOR APPELLANT IN PETITION FOR REHEARING.

Additional citations: Russell v. State, 57 Miss., 387; Hawes. v. People, 11 Neb., 537.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The uncontradicted evidence in this case shows that the accused, without previous warning, entered in the daytime the saloon of the deceased, who was sitting quietly at a table, and abruptly said to him, "Dick Perkins, I came here to kill you, and God damn you, I am going to do it;" and notwithstanding the deceased rose from the table, protesting in the following language, "My God, man, don't shoot me," the accused then and there shot him, and pursued him outside of the house, on the street, where he fired two more shots into his body, causing his death. No instruction was given nor was there evidence to authorize an instruction, upon the hypothesis of either manslaughter or self-defense. For the purpose of showing a motive for the deed, the Commonwealth was permitted by the court to prove a statement made by the accused, a few hours after he had been put in jail, to a newspaper correspondent, which was brought about and is substantially as follows: Cromwell, the newspaper man, told the accused that he had a statement of the other side, and that he had better make a statement, whereupon the accused said that he had killed him, and was glad of it; that he had dis-

graced and ruined his life; that he had intended to kill both Perkins and Haley, but found Haley had died suddenly some days before; that Perkins had been the cause of his being arrested several years before, and fined in the police court, and sent to the workhouse, and Policeman Haley, who had arrested him, had clubbed him in making the arrest, and that his arrest and confinement in the workhouse had been the cause of his wife separating from him, and had disgraced him. As that statement appears to have been made voluntarily, and without the influence or constraint of either threats or promise of any reward or benefit, we think the objection to the testimony was properly overruled. It was proved by another witness that about two years before the homicide the accused referred with a great deal of feeling to the treatment he had received at the hands of Policeman Haley and the deceased, and stated his determination to get even with them.

The principal ground of defense on the trial below was insanity, and the principal reason now urged for a reversal of the judgment is that the lower court failed to fully and properly instruct the jury on the subject of insanity. The instructions necessary to quote are as follows:  "(1) If the jury believe from the evidence, beyond a reasonable doubt, that the defendant, G. A. Portwood, in Fayette county, Kentucky, and before the time the indictment herein was found, on the 14th day of April, 1898, willfully and with malice aforethought shot and killed Richard Perkins, by shooting said Perkins with a pistol loaded with powder and leaden balls, the jury should find the defendant guilty of murder, unless the jury believe from the evidence that at the time of such shooting, if there was such, the defendant was of unsound mind, in which event the jury should find the defendant not guilty.  (2) If at the time defendant

shot Richard Perkins, if he did shoot him, the defendant did not have mental capacity sufficient to enable him to know and understand that it was wrong to shoot said Perkins, the defendant was of unsound mind, or if at the time the defendant shot Richard Perkins, if he did shoot him, the defendant was prompted to do such shooting by an impulse, resulting from a diseased mind, of such violence that it overcame the will of the defendant, and constrained him to shoot said Perkins when he did not wish to do so, the defendant was of unsound mind. If, however, at the time the defendant shot Richard Perkins, if he did shoot him, the defendant had mental capacity sufficient to enable him to know right from wrong, and if he had will power sufficient to enable him to choose between shooting and refraining from shooting said Perkins, the defendant was of sound mind. Or if the defendant at the time he shot Richard Perkins, if he did shoot him, had mental capacity sufficient to enable him to know right from wrong, and if his mind was free from disease, then no impulse to shoot said Perkins, no matter how violent, and no matter how completely it dominated the will of defendant, was unsoundness of mind." The error which it is contended the court committed was the failure to instruct the jury that before they could convict they must believe, to the exclusion of a reasonable doubt, that the accused was at the time he committed the act of sound mind. What counsel contends for in this case involves the radical change of a rule of evidence long and well settled by this court. In view, however, of the severe penalty—that of death—we would not hesitate to change that rule, if convinced of the propriety and wisdom of doing so. But this court has heretofore, more than once, after thorough consideration and discussion, settled the question, we now think correctly. In

Graham v. Com., 16 B. Mon., 587, where the question was thoroughly considered, and authorities examined, the following language was used: "This principle of requiring clear and satisfactory evidence in support of the defense of insanity thus appears to be recognized and adopted in England and this country, and not to have been regarded as conflicting with the principle which deems every man innocent until the contrary is shown beyond a rational doubt. It is based upon the legal and obviously necessary presumption of sanity, and in our opinion it is a safe rule, founded in reason and good policy, sanctioned by experience and authority, and should not be departed from." That case was followed and approved in Brown v. Com., 14 Bush, 398, and the doctrine thus settled has not been since questioned. Numerous witnesses—most of them, however, relatives—testify to acts and language at various times indicating temporary aberration of mind of the accused. Two attempts by him to commit suicide are proved, and there is evidence tending to show that insanity is hereditary in the family, his father having been confined for several years, and died, in a lunatic asylum. On the other hand, testimony of witnesses for the Commonwealth tends to show that his violent acts and extravagant language resulted from the intemperate use of intoxicating liquors, to which he had been addicted for some time. The evidence in this case shows that he was very much incensed against the deceased and the policeman, and that he for two or three years harbored malice against them, and that the killing was certainly not the result of a casual or accidental meeting, or of a sudden or unpremeditated impulse. In our opinion there was evidence sufficient to authorize the jury to find that the accused was not insane at the time of the killing.

Judgment affirmed.