CASE 69—WILLIAM McCARTY WAS CONVICTED OF MURDER AND APPEALS.
—JAN. 28

# McCarty v. Commonwealth.

### APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FIXING DEATH PENALTY. AFFIRMED.

MURDER—INSANITY—INSTRUCTIONS—ARGUMENT OF COUNSEL—EXCEP-
TIONS.

Held: 1. On a trial for murder of defendant's wife there was evi-
dence that on the previous evening, and on numerous occa-
sions running back for several months, defendant had abused
and beat her, because she did not give him money, and, as
some witnesses testified, because she did not give him money
to buy whisky; that he was without means, idle, and dissipated,
and had done little or no work for several months, while she
had worked as a domestic; and that he had frequently threat-
ened to kill her.    The court charged that such evidence was ad-
mitted solely for the purpose of showing the state of defend-
ant's mind, if it did show it, and of his motives; and that the
jury should not allow the same to influence their verdict in
fixing the punishment, if they should from the other evidence
find the defendant guilty.    HELD, that such instruction was as
favorable to defendant as he was entitled to.
2. Where a husband continued to live with his wife for weeks after
having been told of her infidelity, his subsequent act of killing
her could not be reasonably attributed to jealous frenzy aroused
by a sudden and unexpected revelation of her infidelity.
3. If defendant's mind was "free from disease, then no impulse to
shoot" the deceased, "no matter how violent, and no matter
how completely it dominated his will, was unsoundness of mind,"
so as to excuse the homicide.
4. Where the bill of exceptions in a murder case does not show
the remarks made by the attorney for the Commonwealth, or
that any exceptions were taken thereto, the appellate court can
not consider complaints thereof, based on what purports to be a
newspaper report of a portion of the remarks.

W. G. DUNLAP, ATTORNEY FOR APPELLANT.

Our contention is:
1. That at the time of the killing appellant was so mentally

McCarty v. Commonwealth.

exercised over the discovery of the infidelity of his wife as to be irresponsible for his acts.

2. At any rate, if guilty at all, he is only guilty of killing in sudden heat and passion and should not, under the evidence, have been found guilty of murder.

3. That the court erred in its instructions to the jury to the prejudice of appellant.

4. That the attorney for the Commonwealth in his closing argument to the jury made a vicious attack upon the character of appellant, where there was no testimony before the jury bearing upon it.

5. The defendant was a poor man of no influence and seems to have been offered up as a sacrifice to the public clamor that somebody ought to be hung.

W. P. KIMBALL, ATTORNEY FOR APPELLEE.

1. The evidence in this case showed that appellant had on previous occasions cruelly beat and maltreated his wife and had threatened to kill her, and we claim that these acts and threats were competent evidence for the consideration of the jury, especially as to whether the killing was a sudden impulse or premeditated.

2. There was no evidence before the jury showing any hereditary taint of insanity in defendant or his family, and nothing to support the appellant's claim of an "irresistible impulse to kill his wife, on the pretended discovery of her infidelity."

3. No objection was made to the language used by the Commonwealth attorney in his closing argument.

4. The instructions given by the court fairly and clearly present the law applicable to the case.      104 Ky., 496; 14 Bush, 398; 16 B. Mon., 587; Wharton's Crim. Law, 10 ed. vol. 1, p. 60, sec. 46; Moore v. Com., 92 Ky., 637.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant was tried, indicted, and convicted of the crime of willful murder, and sentenced to death. He was found guilty of having maliciously and feloniously killed his wife by shooting her in the back. His defense, and the only defense, was that of insanity. There is no evidence in the record of any taint from this malady in appellant's family, or in him previous or subsequent to the killing. No witness testified that, in his opinion, appellant was, or ever had

been, insane. Appellant claimed that he had reason to believe that his wife had been unfaithful to him, and that at numerous times during several weeks and months prior to the killing information to that effect had come to him: that he had frequently discussed the matter with his wife. On the fatal occasion he claimed that he saw her at the home of a Mrs. Swigert, in the company of some unknown man, and that Mrs. Swigert's house had a bad reputation. As to these occurrences, including the killing, appellant testified as follows: "I thought I would go down and ask Mrs. Swigert where she was; and Bert Miller said: 'Come on. I ain't going to wait here all night for you;' and I went on, and as I got to the corner of the kitchen there, I commenced coughing, and I heard a noise at the other end of the little passway, and I looked up and saw Lucy [appellant's wife] and a man standing inside the gate between the houses; and they immediately commenced to run —the man first and Lucy second—but as they opened the gate I saw the plain figure of a man; but Lucy got between us, and I did not see where he went. But when I thought of the past, and all that had been told me, these things all came up before me, and I felt— Well, I do not know how I did feel—to think of all these things that had been told me, and to think that they were true. And I opened the gate, and I heard Mrs. Swigert say, 'Run, my God, run!' and Lucy run in the front door into the front room, and was in the act of going through the middle door, and I shot her twice, and run out right quick to see if I could find the man that was with her. I went around the house to see if I could catch him or not, but I could not see anything of Bert Miller, or the man, or anybody else. But when I came to myself, and thought about what I had done, I thought I had better see my mother. I thought I had

better see her first myself, and tell her what had happened, and I thought I would then give myself up." Instead of giving himself up, appellant hid himself under a house in the neighborhood, where he was found and arrested by the officers. That quoted above is the only evidence that in any way tends to establish appellant's claim of his being of unsound mind at the time of the killing, if it does. The only other witness to the transaction, except Mrs. Swigert, is Bert Miller. He testified that appellant was drinking, and was somewhat under the influence of whisky; that the killing occurred at 7 o'clock in the evening, after dusk. The witness and appellant were together, hunting for Mrs. Lucy McCarty, the deceased. As to what occurred just before and at the time of the killing, this witness said: "We got about fifteen feet away from the gate—somewhere along about that distance—and saw his wife standing there talking to a woman. Q. Where? A. At a lattice gate. Q. Between the two houses? A. Yes, sir. . , . Q. Who did you see? A. This woman and his wife. Q. Which woman? A. I do not know who she was. Q. Saw Mrs. Swigert and a woman? A. Not Mrs. Swigert; Mrs. McCarty. Q. What took place then? A. He broke and run towards her. Q. Run in what direction? A. Toward Main street. When he run, she slammed it to, and he jerked it open, and followed her into the front door. Q. Did you follow them? A. Yes, sir; I got as far as the front porch; and as she run, he run right behind her, and shot her twice, and as he shot her she hollered, 'O, Lord God, help!' and he had his arm around her, and let her down, and run out. Q. You say his wife and this woman were standing at the lattice gate? A. Yes, sir." Mrs. Swigert referred to, did not testify in the case. It was shown that shortly after this tragedy she became violently insane from the fright

and shock, and was, and has since been, confined under verdict and judgment of the Fayette circuit court in the Eastern Lunatic Asylum at Lexington. Evidence was admitted that on the previous evening, and on numerous occasions before, running back for several months, appellant had abused and beat and otherwise mistreated his wife. The motive for this conduct was shown to be because she did not give him money, and some witnesses intimate because she did not give him money to buy whisky. Appellant was without means, idle, and dissipated. He had done little or no work for a number of months, while his wife had been at work as a domestic. Numerous threats are proven in which appellant had said he would kill his wife. The court specifically charged the jury as to all of the evidence concerning previous assaults and threats by the accused; that it was admitted solely for the purpose of showing the state of appellant's mind, if it did show it, and of his motive; and that the jury should not allow same to influence their verdict in fixing the punishment if they should, from the other evidence in the case, find the defendant guilty of the crime for which he was then being tried. Certainly this action of the court was as favorable to appellant as could be expected; indeed, more favorable, probably, than he was entitled to. Whether appellant's wife had in fact been unfaithful to him, or had given him cause to believe or suspect it, is not at all clearly shown by the proof. And, even if it had been, it was also shown conclusively, and by appellant's own testimony, that he continued for weeks to live with her after having been told of her alleged wrong. His subsequent act of killing her can not, then, be reasonably attributed to the supposed jealous frenzy aroused by a sudden and unexpected revelation of his wife's infidelity. Rather, though it be con-

ceded that he had the suspicion claimed, and reasonable grounds therefor, it appears that he was executing a determination previously and coolly formed, and announced in numerous threats to himself execute upon her a dire vengeance.

Appellant complains of the instructions given by the court to the jury on the subject of insanity. They are in the identical language, excepting names, used by the same court on the trial of Portwood. Portwood's defense was insanity. He was convicted, and sentenced to death. On appeal this court held that the instructions given fairly presented the law, and the judgment was affirmed. Portwood v. Com., 104 Ky., 496 (20 R., 680) 47 S. W., 339. The instructions as to insanity are as follows: "(2) If the defendant did shoot Lucy McCarty, but at the time he shot her the defendant did not have mental capacity sufficient to enable him to know and understand that it was wrong to shoot said Lucy McCarty, the defendant was of unsound mind; or, if the defendant did shoot said Lucy McCarty, but at the time he shot her the defendant was prompted to do such shooting by an impulse, resulting from a diseased mind, of such violence that it overcame the will of the defendant, and constrained him to shoot said Lucy McCarty when he did not wish to shoot her, the defendant was of unsound mind. (3) If the defendant did shoot Lucy McCarty, but at the time he did so the defendant had mental capacity sufficient to enable him to know right from wrong, and if at the time he had will power sufficient to enable him to choose between shooting and refraining from shooting said Lucy McCarty, the defendant was of sound mind; and if the defendant did shoot Lucy McCarty, but at the time he did so the defendant had

mental capacity sufficient to enable him to know right from wrong, and if his mind was free from disease, then no impulse to shoot said Lucy McCarty, no matter how violent, and no matter how completely it dominated the will of the defendant, was unsoundness of mind." The argument is directed principally against the expression at the close of the third instruction, "if his mind was free from disease, then no impulse to shoot said Lucy McCarty, no matter how violent, and no matter how completely it dominated the will of the defendant, was unsoundness of mind." It must be the contention of appellant's counsel, that any impulse that at the time may be irresistible, will excuse homicide. Happily for society, this is not the law; otherwise an ungovernable temper, or violent, brutish passion, or frenzy caused by indignation or anger, or drunkenness, or altercation would excuse such one. Only persons insane, or who have never reached years of discretion, are not accountable for the commission of crime. Even then the insanity that excuses is such as deprives the person committing the act of his reason or will in that particular transaction. The irresistible impulse recognized by the law is that only resulting from mental disease— from the derangement of the mind caused by a disease of the mind. It is not material how recently the derangement may have occurred. A person acts under an insane, irresistible impulse when, by reason of the duress of mental disease, he has lost the power to choose between right and wrong, to avoid doing the act in question, his free agency being at the time destroyed. 1 Bish. Cr. Law, section 387; Parsons v. State, 81 Ala., 577, 2 South., 854, 60 Am. Rep., 193; Portwood v. Com., supra; Graham v. Com., 16 B. Mon., 587; Brown v. Com., 14 Bush, 398; Moore v. Com., 92 Ky., 637 (13 R., 738) (18 S. W., 833).

Another and final complaint is that the attorney for the Commonwealth exceeded his authority and abused his privilege in the closing argument to the jury. The remarks complained of are not shown in the bill of exceptions, nor does it appear from the record that there was objection or exception thereto. We can not, from the record, say that anything was said by the prosecuting attorney in his argument that is the subject of review by this court. Counsel for appellant files with his brief what purports to be a newspaper report of a portion of the Commonwealth attorney's argument. It must be plain that the court could not take notice of such an objection thus presented.

An unobjectionable jury of the community, selected fairly, under the duty alike of enforcing the criminal laws of the State in this case and of determining under proper instructions and guarded legal procedure the fact of the defendant's guilt, have found him guilty of the crime charged. We can not say that the evidence does not support their verdict. In their discretion they have inflicted the severest penalty.

There appears to us to be no error in the record, wherefore the judgment must be affirmed.

Petition for rehearing by appellant overruled.