Lawrence J. DUGAN, Appellant,

v.

COMMONWEALTH of Kentucky.

Court of Appeals of Kentucky.

March 25, 1960.

John Y. Brown, Lexington, for appellant.

Jo M. Ferguson, Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Upon trial under an indictment charging him with the murder of his girl friend, Lawrence Dugan was convicted of voluntary manslaughter and given a twelve-year sentence. Appealing from the judgment, Dugan maintains that the trial court erred in not giving an insanity instruction and in refusing to admit testimony as to the results of a truth serum test that he underwent.

Dugan was a member of the Kentucky State Police and at the time of the offense was in full uniform and was wearing a service revolver. The girl was killed by a single shot from the revolver. There was evidence for the Commonwealth that the girl had transferred her affections to another man; that Dugan was jealous and on two previous occasions had threatened to kill the other man; and that at the moment of the shooting the girl was in the act of getting out of Dugan's car in which the two had been sitting and talking while it was parked near the girl's home.

Dugan's testimony was that as the two sat and talked in his car he suddenly became very depressed and had an urge to commit suicide; he took his revolver from its holster with the purpose of shooting himself; the girl grabbed for the revolver in an attempt to stop him and in the struggle for possession of the gun it went off accidentally. He further testified that on several previous occasions, over a period of years, he had been subject to fits of depression in which he had felt the urge to kill himself, and on two recent occasions, when he was in the company of the girl, he had attempted to shoot himself but she had succeeded in stopping him. He also said he had sought medical treatment for relief from the recurring depressions. A psychiatrist testified that it is rather common for persons who suffer periods of depression to think of destroying themselves, and that it is a sign of emotional immaturity. However, there was no medical testimony that Dugan was psychotic.

■ The appellant appears to concede the proposition that if the shooting, though accidental and unintentional, was the result of or was occasioned by a voluntary and intentional wrongful act, such as an attempt to commit suicide, a conviction of voluntary manslaughter would be justified. See Commonwealth v. Hicks, 118 Ky. 637, 82 S.W. 265, holding that suicide is a common-law felony in Kentucky; also Commonwealth v. Mink, 123 Mass. 422, 25 Am.Rep. 109, and State v. Levelle, 34 S.C. 120, 13 S.E. 319, holding that the accidental killing of another person, in the course of an attempt to commit suicide, is a criminal homicide amounting at least to voluntary manslaughter. Further see Ellison v. Commonwealth, 12 Ky.Op 665. But the appellant's theory is that if the initial wrongful act (here, the attempt to commit suicide) was the result of an insane impulse, criminal responsibility cannot attach by reason of an accidental killing growing out of the wrongful act. He argues that the court should have given an insanity instruction embodying this theory.

The appellant's argument, as presented in his brief, is that there should have been an insanity instruction stating the two tests of whether he knew right from wrong and whether he knew the nature and quality of his acts. However, there was no basis for such an instruction, because there was no evidence, even in the defendant's own testimony, to indicate that he did not know right from wrong or did not know the nature and quality of his acts. The only argument that reasonably could be

made is that there should have been an instruction stating the test of whether as the result of mental unsoundness the defendant had not sufficient will power to govern his actions by reason of some insane impulse which he could not resist or control. See Abbott v. Commonwealth, 107 Ky. 624, 55 S.W. 196, and Jolly v. Commonwealth, 110 Ky. 190, 61 S.W. 49.

■ In order for a so-called "irresistible impulse" to constitute an excuse for a crime it must result from mental disease. McCarty v. Commonwealth, 114 Ky. 620, 71 S.W. 656; Howard v. Commonwealth, 224 Ky. 224, 5 S.W.2d 1056. A mere failure to exercise self-discipline over emotions and impulses is not enough.

■ We believe that the most that can be gathered from the evidence for the defendant in this case is that he was emotionally immature and indulged in childish self-pity to the extent of making a gesture or display of an attempt at suicide on occasions when events did not go to suit him or when he was confronted with depressing circumstances. There was no medical evidence that he was suffering from mental disease. Nor does the nature of the various abortive attempts at suicide related by the defendant suggest the operation of a diseased mind emanating impulses of such force as to be beyond the will of the defendant to resist. The fact that none of the attempts approached success is strongly indicative that such impulse as may have existed was within the power and will of the defendant to control.

It is our opinion that the trial court did not err in refusing to give an insanity instruction.

■ A truth serum test was given to the defendant, shortly before trial, by a psychiatrist employed by the defendant. The court refused to admit testimony of the psychiatrist to the effect that the test revealed that when the defendant said the shooting was an "accident," he was telling the truth.

As yet, no court of last resort has recognized the admissibility of the results of truth serum tests. Annotation, 23 A.L.R. 2d 1306, 1310. The principal ground for rejection has been that such tests have not attained sufficient scientific recognition of dependability and reliability. Where, as in the instant case, the results of the test have been offered by the defendant to prove the truth of his own testimony, some courts have stated as a further ground for rejection that the statements made under the influence of the serum would constitute hearsay and self-serving declarations.

In Colbert v. Commonwealth, Ky., 306 S.W.2d 825, this Court held inadmissible the results of a particular polygraph lie detector test, on the ground that there was not a sufficient showing of reliability and accuracy.

While the psychiatrist in the case now before us testified as to results considered by him to be reliable in giving truth serum tests over a period of years, it appears that he checked the accuracy of his tests mainly by the case histories and psychological backgrounds of the subjects. He did not attempt to state that the tests have received general scientific acceptance. He admitted that the tests will not work with some subjects.

Even if the results of a truth serum test should be considered admissible upon a showing that such tests under proper conditions achieve a certainty of truth and that the particular test was administered under proper conditions, the record in this case falls far short of making such a showing. The use of scientific devices for determining the truth of a person's statements represents a radical departure from the traditional legal approach to the problem of determining the credibility of witnesses, the acceptance of which would require a revision of many principles of the law of evidence (such as those governing hearsay and self-serving declarations), and this Court is not disposed to lead a safari into that jungle without first being satis-

fied that the new devices to be employed have attained full scientific acceptance.

It is our opinion that the trial court did not err in refusing to admit the evidence of the results of the truth serum test.

The judgment is affirmed.