**Emmett Glenn FERGUSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 17, 1972.

Rehearing Denied June 9, 1972.

John C. Anggelis, Anggelis & Vimont, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

NEIKIRK, Judge.

Emmett Glenn Ferguson was convicted in the Fayette Circuit Court of voluntary manslaughter. His punishment was fixed at twenty-one years in the state penitentiary. He appeals. We affirm.

Appellant's wife, Carolyn Louise Ferguson, died on the evening of July 31, 1971, as a result of a bullet wound to the head from a .22 caliber Beretta pistol. Emmett and Carolyn had been separated for several weeks prior to her death. Carolyn was sharing an apartment with Linda Fornay, a friend. Emmett procured a pistol and went to the apartment of his estranged wife. He testified that he had purchased the pistol after receiving several threats from an unknown person to stay away from Carolyn, and that he had gone to his wife's apartment to discuss the threats and also to discuss with her some purchases

she had made in his name. Upon arriving at the apartment, he was refused admittance when he attempted to enter the door. He testified that he leaned against the door, it opened, and he walked in, with the pistol in his hand, which, he claimed, was to frighten his wife, and that it discharged as she pulled it down toward her head. No one witnessed this unfortunate killing. Linda Fornay was in the apartment at the time, but testified that she did not see what happened, although "I did hear the shot." She stated that she heard no sounds of a fight, but that the latch chain on the door had been ripped from the wall and the door forced open. After the shooting, appellant went to the police and reported the incident.

It was developed at the trial that the appellant on several occasions had said that he would kill his wife and that he "would blow out her brains."

Appellant contends that the trial court erred in refusing to allow Dr. Martin Gerbrow, a psychiatrist, to testify as to statements that the appellant made while under the influence of sodium amytal, a truth serum.

In Dugan v. Commonwealth, Ky., 333 S.W.2d 755 (1960), we held that such evidence involving truth serum was inadmissible on the ground that "such tests have not attained sufficient significant recognition of dependability and reliability." We still are not prepared to adopt the position that there has been such a scientific breakthrough in the use of truth serum as to assure the reliability of such tests. We conclude that the tests were properly excluded. Merritt v. Commonwealth, Ky., 386 S.W.2d 727 (1965).

Appellant contends that two prior acts involving the appellant were so unrelated and unconnected to the offense charged that their admission into evidence was prejudicial. A sister of the deceased's testified that the appellant had told her that during an argument with the deceased he had knocked her down and fractured her jaw. Appellant, in his testimony, explained the circumstances of the argument, and stated that the event had occurred several months prior to his wife's death. The Commonwealth contends that this evidence was properly admitted as tending to establish the relationship of the parties and the state of feeling between them prior to the fatal encounter, and that the evidence of previous quarrels and difficulties between the deceased and the accused was relevant to show motive. We find no error in the admission of this evidence. Dye v. Commonwealth, Ky., 477 S.W.2d 805 (decided March 3, 1972).

The second incident involved the discharge of a .22 caliber rifle in the appellant's home several weeks prior to his wife's death. Appellant, when questioned about the incident, testified that on that occasion he was in the process of moving some of his personal belongings and furniture from one room to another and was taking an old .22 caliber rifle out of the room when John Gum, his father-in-law, asked to see the rifle, reached for it, and it discharged into the ceiling. Mr. Gum corroborated this testimony. The deceased was in the backyard at the time of that incident and was not involved in any manner. In our opinion, this evidence should have been excluded. This was a prior act, having no relation to or bearing on the present charge. However, in light of appellant's explanation concerning this happening, and in consideration of all the other evidence, we do not find this error to have so prejudiced the appellant's substantial rights as to necessitate a reversal.

There was sufficient evidence to support the jury's verdict of voluntary manslaughter. The appellant and the deceased had marital problems. They had been separated several weeks. On one occasion appellant had broken his wife's jaw. Appellant, allegedly, had stated that he would kill his wife. On the night of the incident, appellant, with a loaded gun,

forced his way into his wife's apartment. His only defense was that the deceased grabbed his arm and pulled the gun toward her head, causing it to discharge. The jury was not required to believe his story.

The trial court properly instructed the jury on the whole law of the case, including instructions as to willful murder, voluntary manslaughter, and involuntary manslaughter. The appellant contends that no murder instruction should have been given. The giving of an instruction on murder is not prejudicial where the defendant is convicted of voluntary manslaughter. Mason v. Commonwealth, Ky., 463 S.W.2d 930 (1971). We find that the instructions when read together and considered as a whole were such as to be clearly and easily understood by the jury. Thomas v. Commonwealth, Ky., 412 S.W. 2d 578 (1967).

The judgment is affirmed.

All concur.