STATE, ex rel. *v.* QUINN, et al.

May 11, 1953

No. 38834 31 Adv. S. 68 64 So. 2d 711

568

*Luther W. Maples,* District Attorney, and *Thomas J. Wiltz,* for appellant.

*H. W. Gautier,* for appellees.

LEE, J.

A bill of complaint was filed in the Chancery Court of Jackson County by the State, on the relation of Luther W. Maples, District Attorney of the Second Judicial District, in which Jackson County is included, against Wallace M. Quinn and others to abate a public nuisance.

The allegations thereof were substantially as follows: (Hn 1) The defendants operate a fish reduction plant on the south bank of Sioux Bayou, on the Pascagoula River, in Jackson County. During the period from May to October of each year, menhaden or pogie fish are taken in the Gulf of Mexico and are reduced to oils and solids. In the process, large quantities of vapors, gases and minute particles of the fish are discharged into the atmosphere, as waste matter. The odors are noxious, nauseating and revolting to the senses. Foul and putrid waste is dumped into the bayou, polluting and ruining it and the lower stretches of Pascagoula River for fishing. The area for several miles is blanketed with these deleterious and sickening odors. The people in the vicinity are unable to enjoy the comforts of their homes or the food which is served at their tables. They are nauseated, made sick, and are unable to sleep at night. The value of nearby property has been greatly depreciated. Such conditions are detrimental to the health of the community. Damages are difficult of ascertainment. No adequate remedy exists except by injunction. It was further alleged that proper equipment could be installed to prevent these conditions.

The original bill was amended so as to charge that the defendants were contending that they had been operating their plant by the most efficient methods and that no other machinery is procurable which would eliminate

such conditions, but that complainant denies such conditions and further alleges that even if they were true, the plant, as operated, would constitute a public nuisance.

A demurrer was interposed, raising, in effect, two grounds: (1) there is no right of the State to bring the suit on the relation of the district attorney; and (2) the factual differences in the allegations of the original and amended bills are contradictory and irreconcilable.

On the hearing, the demurrer was sustained; the complainant declined to plead further; and a final decree of dismissal was entered. From the action taken, the complainant appeals.

The acts and conduct charged in the allegations of the bill, and, therefore, admitted by the demurrer, showed the existence of a public nuisance. 6 C. J. S. 730-32, Nuisances, Section 2; Section 19, pp. 769-71; Section 23, pp. 775-78.

In dealing with the subject of Nuisances, Blackstone's Commentaries of the Law, by Bernard C. Cavitt, under the topic of Public Wrongs, at page 822 says: ▮▮▮ ''These are a species of offence against the public order and economical regimen of the state; being either the doing of a thing to the annoyance of all the king's subjects, or the neglecting to do a thing, which the common good requires. These are termed common nuisances, and are distinct from private nuisances, inasmuch as they annoy the whole community in general, and not merely some particular person, and therefore are indictable only and not actionable; for it would be unreasonable to multiply suits by giving every man a separate right of action, for what damnifies him in common only with the rest of his fellow subjects.''

39 Am. Jur. 449, Nuisances, Section 178, says: ''Public nuisances are offenses against the state, and since early times it has been held that one who is responsible for this character of wrong may be proceeded against criminally by indictment.'' 69 C. J. S. 964, Nuisances, Section 159, says that: ''. . . as a general rule the creation or

maintenance of a public nuisance is an indictable offense . . ."

In State v. Marshall, 100 Miss. 626, 56 So. 792, the opinion cited with approval from Story on Equity Jurisprudence, Sections 921-23, as follows: "In regard to public nuisances, the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth . . . In cases of public nuisances . . . an indictment lies to abate them, and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction."

Our law reserves the right of the State to prosecute crimes which were indictable at common law even though they may not be denominated as such or be provided for by the statutes of the State. See Section 2560, Code of 1942, which is as follows: "Every offense not provided for by the statutes of this state shall be indictable as heretofore at common law." And, Section 2562, Code of 1942, provides penalties for ". . . offenses indictable at common law, and for which a statutory penalty is not elsewhere prescribed, . . ."

Thus the operation of a public nuisance may constitute a violation of the law and may subject the offender to prosecution and sentence.

But the State does not have to be content with a prosecution for the crime only. It may also resort to a suit in equity to suppress the nuisance. See 39 Am. Jur. 411-12, Nuisances, Section 147, where it is said: "Where an act is both a public nuisance and a crime, the State may suppress it by a suit in equity or resort to a criminal prosecution, or may do both." See also, State v. O'Leary, 155 Ind. 526, 58 N. E. 703, 52 L. R. A. 299; 66 C. J. S. 866, Nuisances, Section 110; State v. Marshall, supra.

██ Section 3920, Code of 1942, is as follows: "It shall be the duty of the district attorney to appear in the circuit courts and prosecute for the State in his district

all criminal prosecutions and all civil cases in which the State or any county within his district may be interested; but if two or more counties are adversely interested, the district attorney shall not represent either. Any district attorney may also institute and prosecute to final judgment or decree any case in the name of the State, against any person or corporation for any violation of the Constitution or the laws of this State, in order to enforce any penalties, fines or forfeitures imposed by law in any court of his district having jurisdiction, with like effect as if the suit was instituted by the attorney-general.''

The first sentence of the above section enumerates certain mandatory duties which devolve upon a district attorney. The second sentence thereof vests him with authority, in his discretion, to ''. . . *institute and prosecute to final judgment or decree any case in the name of the State, against any person* or corporation *for any violation of* the Constitution or *the laws of this State,* in order to enforce any penalties, fines or forfeitures imposed by law in any court of his district having jurisdiction, with like effect as if the suit was instituted by the attorney-general.'' (Emphasis supplied.)

The proceeding to abate this alleged public nuisance, therefore, falls squarely within the discretionary duties and powers of the district attorney.

The defendants in this suit are individuals. The offense laid at their door occurred and is occurring in Jackson County. The public, the alleged victims, live, and their properties are situated, in close proximity to the plant. Thus, the public interest here involved is purely local, in Jackson County, and not statewide. Hence this is not a suit such as could be instituted only by the attorney general, but under the existing facts and circumstances, the district attorney is unfettered in his authority to institute it in the name of the State. Capital Stages v. State, ex rel., 157 Miss. 576, 128 So. 759;

Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So. 2d 483.

For the error of the trial court in sustaining the demurrer, the cause is reversed and remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Arrington, JJ.,* concur.