# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 91-KA-00511-SCT

*GAIL D. NICHOLSON ON BEHALF OF FRANCIS RAY GOLLETT, DECEASED*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 2/16/91 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GAIL D. NICHOLSON |
| | CHESTER D. NICHOLSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KENNETH C. O'NEAL |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/18/96 |
| MOTION FOR REHEARING FILED: | 6/13/95 |
| MANDATE ISSUED: | 4/25/96 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The petition for rehearing is denied. The original opinions are withdrawn and these opinions are substituted therefor.

### I. INTRODUCTION

¶2. This case concerns several constitutional and criminal law issues appealed by Francis Ray Gollott, defendant (Gollott) from a conviction of manslaughter in the death of Bilie Diane Gollott (Diane) on February 16, 1991. The trial court judge sentenced Gollott to fifteen years in the custody of the Mississippi Department of Corrections, with three years suspended. Aggrieved, Gollott appeals to this Court the following issues: [1]

> 1) DID THE TRIAL COURT DENY GOLLOTT A FAIR TRIAL UNDER THE SIXTH AND
> FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND

ARTICLE III, SECTION 26 OF THE MISSISSIPPI CONSTITUTION, BECAUSE OF PROSECUTORIAL MISCONDUCT IN PROCURING THE ASSISTANCE OF THE CIRCUIT CLERK IN AN EFFORT TO STACK THE JURY WITH JURORS HAVING A PENCHANT TO CONVICT?

2) WAS THE TRIAL BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE III, SECTION 22 OF THE MISSISSIPPI CONSTITUTION?

3) DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION TO DECLARE MISS. CODE ANN. §25-7-13 (1972) UNCONSTITUTIONAL?

4) DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION TO QUASH THE VENIRE AND TO EXCLUDE THE CIRCUIT CLERK?

5) DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND IN FAILING TO GRANT HIS REQUEST FOR A PEREMPTORY INSTRUCTION ON MURDER?

6) DID THE TRIAL COURT ERR IN GRANTING INSTRUCTIONS S-4 AND S-5 OR IN REFUSING TO GRANT D-4, D-11, AND D-12?

7) DID THE TRIAL COURT ERR IN FAILING TO GRANT D-10, THE REQUESTED INSTRUCTION ON ACCIDENT?

8) WAS THE DEFENDANT DENIED HIS RIGHT TO CONFRONT HIS ACCUSERS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE III, SECTION 26 OF THE MISSISSIPPI CONSTITUTION?

9) DID THE TRIAL COURT JUDGE ERR IN REFUSING TO RECUSE HIMSELF?

10) WAS THE TRIAL FUNDAMENTALLY UNFAIR UNDER CUMULATIVE ERROR ANALYSIS?

## II. FACTS AND PROCEDURAL HISTORY

¶3. After a 17 year marriage, Francis Ray Gollott (Gollott) and Billie Diane Gollott (Diane) were divorced. They continued to run a business together following their divorce, and met with some frequency. On May 10, 1989, Gollott went to Diane's home to discuss business; she suffered a gunshot wound from Gollott's pistol and died. Gollott was indicted for murder, and his first trial resulted in a mistrial when the jury could not agree. The second trial, appealed here, resulted in a conviction of Gollott to the lesser charge of manslaughter.

¶4. The proof offered at the second trial is best understood with a description of Diane's home. The shooting took place in a rear room which had a six foot wide sliding glass door which opened onto a patio surrounding a swimming pool. Diane was seated in a chair about four feet inside the sliding glass door. Eighteen yards in back of Diane's home was a two-story apartment where Diane's tenants lived. Helena Fuller, one tenant, lived on the second floor with a view of Diane's sliding glass patio door. John Bell,

another tenant, lived on the first floor of the apartment, and his sliding glass door opened directly across from Diane's sliding glass door in her home.

¶5. The proof offered established a series of events on the day of Diane's death. Lonnie Hebert, an employee of Diane and Gollott, stated that Gollott ordered Hebert to give him a copy of Diane's work schedule. Gollott stated that he would get that schedule "if he had to slap the (expletive deleted) out of her to get it." Hebert also stated that Diane had told him that Gollott had threatened her. Gollott explained that in attempting to get the work schedule, he was trying to avoid contact with Diane. Gollott had a key to Diane's home.

¶6. The day of the shooting, Billy Jack Edgerton, Diane's father, testified that Gollott told him he and Diane should both make out a will. Latter, Gollott explained that his statement was a joke.

¶7. John Bell, who had a view of Diane's home at the rear across a swimming pool, saw Gollott's truck at Diane's house around 5:00 p.m. Helena Fuller saw Gollott at Diane's house around 4:15 p.m. Fuller testified that Diane called her that night around 9:30 p.m. Fuller testified as to the effect of her conversation with Diane. After their conversation, Fuller stated that she turned down the television, and began to watch Diane's apartment on the first floor from her second floor apartment. Diane arrived at her house at 9:50 p.m. according to Fuller. Fuller had a view of Diane in her room through the glass sliding door, sitting in her chair.

¶8. Gollott, testifying about the evening's events, stated that he and Diane had a discussion about selling the farm. Gollott stated that Diane told him she loved him, but not enough to take care of him. Gollott stated that he then went to his truck, obtained a pistol, returned to the rear room, and asked Diane to shoot him. Gollott stated that Diane told him not to be stupid. After more heated conversation, Gollott took the gun with his left hand, drew the hammer of the pistol back, and brought it up to his head. Gollott stated that there was a gesture from Diane, which he could not describe. Gollott then stumbled, and the gun fired. According to Wayne Hennig, a patrol officer on the scene, Gollott stated to him that Diane grabbed the gun as it fired.

¶9. However, Fuller testified as to this time period that she never saw Gollott go to the truck before Diane's shooting. She did see Diane make a defensive gesture with her left hand in the air. Fuller was dialing 911 when the shot occurred, and she heard Diane scream, "Oh, Ray."

¶10. John Bell also heard the shot and Diane's scream, as if she had cut herself. Bell testified that Diane was still alert and slumped in her chair, when he came to her aid after he heard the gunshot. As Bell began CPR, he heard Diane say, "He didn't . . . ."

¶11. The State's expert opined that the stippling pattern of skin-imbedded-gunpowder indicated that Diane was turning away from the gun and making a defensive gesture. The State's expert testified that the bullet's path indicated the gun was above the shoulder of the victim at the time of the shooting. The gunshot wound was inflicted at close range, entering the left shoulder and traveling through Diane's chest, piercing the heart, both major arteries to the lungs, and the esophagus, and lodging in the right side of her chest under her right arm. Massive internal hemorrhaging was the cause of Diane's death.

¶12. Gollott's experts stated that because of the location of the wound in the left shoulder, the shot indicated an unintentional act. In addition, tests on the pistol demonstrated it had a light trigger pull, and would not

discharge except by the trigger pull. Another of Gollott's experts noted that the pattern of stippling as being on the back side of her hand was inconsistent with a defensive gesture, as people do not ordinarily defend themselves with the back of their hands. That expert also noted that people do not generally defend themselves with defensive gestures in gunshot cases. On this testimony, the jury found Gollott guilty of manslaughter.

## III. ANALYSIS

1) DID THE TRIAL COURT DENY GOLLOTT A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE III, SECTION 26 OF THE MISSISSIPPI CONSTITUTION, BECAUSE OF PROSECUTORIAL MISCONDUCT IN PROCURING THE ASSISTANCE OF THE CIRCUIT CLERK IN AN EFFORT TO STACK THE JURY WITH JURORS HAVING A PENCHANT TO CONVICT?

¶13. Gollott asserts that the alleged assistance provided by the Circuit Clerk of Hancock County to the State in jury selection violates his right to a fair trial. Gollott asserted that since the Circuit Clerk, Pam Metzler, was an officer of the court, her assistance violated the impartiality of the trial, infringing upon Gollott's rights.

¶14. On the second day of trial, the defendant's counsel motioned for a dismissal of the indictment, or in the alternative, for a mistrial for alleged prosecutorial misconduct. The allegations charged that the assistant district attorney sought information from the circuit clerk in jury selection. A hearing outside the jury's presence was held and Pam Metzler testified that after she followed statutory procedures to draw a jury, and before voir dire, the Assistant District Attorney asked her questions about the jurors. She answered the State's questions with information she knew about the jurors. She did tell the State which jurors she recommended to keep or strike. Metzler testified that she assisted the defense, when asked, and that it was her practice to assist anyone. The trial judge did not have the knowledge of this assistance. The record does not state the information Metzler volunteered about the jurors.

¶15. Gollott is correct in stating that the courts guarantee him a right to an impartial jury trial. *Duncan v. Louisiana*, 391 U.S. 145, 155-56, 88 S. Ct. 1444, 1450-51, 20 L. Ed. 2d 491, 498-500 (1968). Gollott is also correct in asserting that courts have held that "participation of an interested official" in juror selection is a due process violation. *Anderson v. Frey*, 715 F.2d 1304, 1309 (8th Cir. 1983), *cert. denied, Frey v. Anderson*, 464 U.S. 1057, 104 S. Ct. 739, 79 L. Ed. 2d 198 (1984). The question arises as to what is an interested official, and what participation must occur for a due process violation to occur.

¶16. Our caselaw makes it clear that both circuit clerks and sheriffs are officers of the court who have duties involved in empaneling a jury. *Addkison v. State*, 608 So. 2d 304, 312 n.4 (Miss. 1992) (citing Miss. Code Ann. §97-9-53 (1972)); *Reining v. State*, 606 So. 2d 1098, 1101 (Miss. 1992). As such, both officers qualify as interested officials under this caselaw.

¶17. The next question to address is what constitutes participation. *Pilchak v. Camper*, 741 F. Supp. 782, 787 (W.D. Mo. 1990), *aff'd* 935 F. 2d 145, 151 (8th Cir. 1991) disallowed a deputy sheriff's selection of jurors. *Anderson* disapproved of a sheriff selecting bystander jurors for panels. 715 F. 2d at

1308-09. This Court has stated "[i]t was never intended that the power of determining who was and who was not fit for jury service should be committed to the judgment of those charged with the duty of drawing the jurors from the jury box for service during a term of court." ***Reynolds v. State***, 199 Miss. 409, 414, 24 So. 2d 781, 783 (Miss. 1946).

¶18. In this case, the circuit clerk did not select any jurors. The district attorney did. The circuit clerk was instead providing information to the district attorney upon request. This Court has held that even a sheriff, otherwise barred from selecting a jury, may provide information to a district attorney in selecting a jury. ***See, e.g., Irving v. State***, 361 So. 2d 1360, 1371 (Miss. 1978), ***cert. denied***, 441 U.S. 913, 99 S. Ct. 2014, 60 L. Ed. 2d 386 (1979). Openness of the official to all inquiries is the determinative factor. There is no reversible error here.

> 2) WAS THE TRIAL BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE III, SECTION 22 OF THE MISSISSIPPI CONSTITUTION?

¶19. Gollott claims that after the mistrial was declared in the first murder trial the second trial was barred by the constitutional double jeopardy clause. It was admitted by the defendant, however, that not every mistrial will support a plea of former jeopardy. Gollott claims that such error was committed by the prosecution at the first trial, in that Gollott was forced to move for a mistrial at that time.

¶20. Gollott asserts that the alleged error in assignment one with the circuit clerk's participation "stacked the deck" with jurors ready to convict. A second jury convicted Gollott of manslaughter. As a result, Gollott argues that he meets the exception for mistrials not ordinarily forming the basis of double jeopardy.

¶21. Generally, a defendant who moves for mistrial is barred from later complaining of double jeopardy. ***McClendon v. State***, 387 So. 2d 112, 114 (Miss. 1980). To overcome this bar, Gollott must show that error occurred and that it was committed by the prosecution purposefully to force Gollott to move for a mistrial. ***Carter v. State***, 402 So. 2d 817, 821 (Miss. 1981); ***see also Divans v. California***, 434 U.S. 1303, 1303, 98 S. Ct. 1, 1, 54 L. Ed. 2d 14, 15 (Rehnquist, Circuit Justice, 1977). Without proof of judicial error prejudicing the defendant, or "bad faith prosecutorial misconduct," double jeopardy does not arise. ***United States v. Jorn***, 400 U.S. 470, 482, 91 S. Ct. 547, 557, 27 L. Ed. 2d 543, 555 (1970) (plurality).

¶22. Gollott asserts that there was a conspiracy to deprive Gollott of his constitutional rights. Gollott fails to show proof of the prosecutor's intent to force Gollott to request a mistrial, through the use of the circuit clerk.

¶23. As such, this case is similar to a recent Mississippi case, where this Court dismissed a double jeopardy challenge where the prosecutor was guilty of error in closing argument, without a showing of intent to force a request for mistrial. ***Wheat v. State***, 599 So. 2d 963, 965 (Miss. 1992). This Court noted federal caselaw required a defendant to show the prosecutor's arguments "intended to 'goad' the defendant into moving for a mistrial." ***Wheat,*** 599 So. 2d at 965 (citing ***Oregon v. Kentucky***, 456 U.S. 667, 673, 102 S. Ct. 2083, 2088, 72 L. Ed. 2d 416, 423 (1982)) (holding prosecutor's actions must force defense to request mistrial). The circumstances in ***Wheat***, and clear prejudice arising at closing argument, were insufficient to bar reprosecution. The alleged error here is even more insufficient to trigger double jeopardy.

3) DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION TO DECLARE MISS. CODE ANN. § 25-7-13 (1972) UNCONSTITUTIONAL?

¶24. Miss. Code Ann. § 25-7-13 (1972) sets forth the fee compensation plan for circuit clerks, and Gollott asserts that the fee system used to compensate circuit clerks creates a financial interest in litigation, favoring criminal convictions. Coupling the financial interest of the circuit clerks with the asserted improper practices of helping prosecutors convict defendant through jury selection, the defendant argues this payment plan awards circuit clerks more money for convictions than acquittals and is therefore unconstitutional.

¶25. Statutes under constitutional attack have a presumption of validity attached to them, overcome only with a showing of unconstitutionality beyond a reasonable doubt. ***Vance v. Lincoln County Dept. of Pub. Welfare,*** 582 So. 2d 414, 419 (Miss. 1991). Nevertheless, the United States Supreme Court has overturned criminal cases involving judicial compensation plans in which a judicial official had a financial incentive to convict a defendant. ***Tumey v. Ohio,*** 273 U.S. 510, 523, 47 S. Ct. 437, 441, 71 L. Ed. 2d 749, 754 (1927) (holding adjudicator's "direct, personal, substantial pecuniary interest(s)" in receiving fee per conviction violative of Fourteenth Amendment); ***see also Ward v. Village of Monroeville***, 409 U.S. 57, 59-62, 93 S. Ct. 80, 82-84, 34 L. Ed. 2d 267, 270-72 (1972); ***Brown v. Vance***, 637 F.2d 272, 282 (5th Cir. 1981) (holding fee system compensating justice court judge for convictions violated "possible temptation" ***Tumey*** standard). Caselaw has extended ***Tumey*** to "administrative adjudicators." ***Gibson v. Berryhill***, 411 U.S. 564, 579, 93 S. Ct. 1689, 1698, 36 L. Ed. 2d 488, 500 (1973).

¶26. However, the key to this issue is the presence or absence of judicial power. ***Doss v. Long***, 629 F. Supp. 127, 129 (N.D. Ga. 1985) (holding ***Brown*** and ***Tumey*** does not tolerate "system(s) giving a judge a personal stake in the outcome"); ***see also In re Ross***, 656 P.2d 832, 838-40 (Nev. 1983) (holding ***Tumey*** barred administrative agencies with quasi-judicial power from acting with financial interest in outcome). The circuit clerk has no judicial power. The role is prescribed by statutes (***See, e.g.,*** Miss. Code Ann. § 13-5-1 for jury selection), and he or she makes no decision affecting the outcome of a case. The Fifth Circuit has held attacks on fee systems under ***Tumey*** are invalid where judicial actions are not involved. ***Brown v. Edwards***, 721 F.2d 1442, 1451 (5th Cir. 1984). Gollott's assertion of an error under ***Tumey*** is misplaced.

4) DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION TO QUASH THE VENIRE AND TO EXCLUDE THE CIRCUIT CLERK?

¶27. This assignment of error has two problems. First, Gollott fails to cite caselaw in support of the argument that the trial court should have excluded the circuit clerk, Pam Metzler, from participating in the second trial, in light of the circumstances in the first trial. This Court is not bound to address assertions of error where a party fails to cite caselaw in support of their argument. ***Century 21 Deep South Properties, Ltd. v. Corson***, 612 So. 2d 359, 370 (Miss. 1992). Second, Gollott fails to demonstrate how he was prejudiced through Metzler's work in the jury selection process for the second trial. Gollott admits that he knew of no affirmative evidence of wrongdoing by Metzler in the second trial. Without some wrongdoing or error, Gollott cannot be prejudiced by anyone's actions. Assertions of error without prejudice do not trigger reversal. ***Hatcher v. Fleeman***, 617 So. 2d 634, 639 (Miss. 1993).

5) DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND IN FAILING TO GRANT HIS REQUEST FOR A PEREMPTORY INSTRUCTION ON MURDER?

¶28. The jury acquitted Gollott of murder through its conviction of Gollott for manslaughter. Therefore, this Court will not generally consider errors on jury instructions concerning murder. *Carter v. State*, 402 So. 2d 817, 819 (Miss. 1981). However, since the *Weathersby* rule applies to all homicides, this Court considers this issue. *Weathersby v. State*, 165 Miss. 207, 209, 147 So. 481, 482 (Miss. 1933).

¶29. The *Weathersby* rule requires the jury to accept the defendant's version of events leading to a homicide, if reasonable. *Weathersby* does not apply if substantial evidence materially contradicts the defendant's version, through credible witnesses, physical facts, or commonly known facts. *Weathersby*, 165 Miss. at 209, 147 So. at 482; *see also Blanks v. State*, 547 So. 2d 29, 33-34 (Miss. 1989).

¶30. Gollott was the only eyewitness to the shooting itself. Gollott's account basically alleged that he accidentally shot Diane while attempting to shoot himself. Gollott asserts that absent substantial contradictory evidence, his version must be accepted, and the trial court erred in failing to direct a verdict, or in failing to issue a peremptory instruction of not guilty on all counts.

¶31. However, Helena Fuller testified that Diane called her the night of her death, which led to Fuller keeping a close watch on Diane. Fuller contradicted Gollott's testimony that he went to the truck to get the murder weapon, stating that he never went to the truck once Diane arrived home.

¶32. Fuller also stated that she saw Diane make a defensive gesture with her left hand in the air. The State's expert opined that the stippling pattern of skin imbedded gunpowder indicated that Diane was turning away from the gun and making a defensive gesture. This evidence both contradicts Gollott's testimony, casting doubt on his credibility, and supports an inference that Diane's death did not occur by accident, since eyewitness testimony and expert analysis indicates she was moving away from the pistol in a defensive gesture at the time of the shooting. The testimony of threats Gollott made to several people would contradict Gollott's version of events.

¶33. In addition, Gollott gave contradictory statements on the shooting. He first said Diane grabbed the gun itself. He later stated Diane grabbed at the gun or made a motion to the gun, causing him to stumble. *Weathersby* is inapplicable when a defendant gives conflicting testimony as to how the homicide occurred. *Blanks,* 547 So. 2d at 33.

¶34. The standard of general review for criminal convictions and directed verdicts is to consider all of the evidence in the "light most favorable to the State." *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986). This Court can only reverse where, under the evidence, a reasonable juror could only find the defendant not guilty. *Jones v. State*, 606 So. 2d 1051, 1060 (Miss. 1992). Without repeating the facts, the expert testimony, Gollott's own testimony of the shooting, and other eyewitness testimony, this record supports a finding that the shooting was not accidental, and that the verdict was at least manslaughter. Accordingly, this Court denies this assertion of error.

> 6) DID THE TRIAL COURT ERR IN GRANTING INSTRUCTIONS S-4 AND S-5 AND IN DENYING DEFENSE INSTRUCTIONS D-4, D-11, AND D-12?

¶35. Gollott complains that the evidence is insufficient to support S-4, a heat of passion manslaughter instruction. Gollott further alleges S-4 is an incorrect statement of the law. Gollott also contends that S-4, the heat of passion instruction, conflicts with S-1 and S-2, the deliberate design instructions. Regarding S-5, a circumstantial evidence instruction, Gollott argues it is peremptory, an improper statement of the law, and

an impermissible comment on the evidence.

¶36. This Court does not review jury instructions in isolation. *Malone v. State*, 486 So. 2d 360, 365 (Miss. 1986). If the instructions given provide correct statements of the law and are supported by the evidence, there is no prejudice to the defendant. *Sanders v. State*, 313 So. 2d 398, 401 (Miss. 1975). This Court has fully examined the instructions granted by the trial court in the case sub judice and finds that, taken together, the jury was correctly and completely charged.

¶37. Regarding the instructions Gollott claims the trial court erroneously refused, Gollott failed to object to the refusal of D-4. As a result, this Court is not bound to address the alleged error on appeal. *Lockett v. State*, 517 So. 2d 1317, 1332-33 (Miss. 1987), *cert denied*, 487 U.S. 1210, 108 S. Ct 2858, 101 L.Ed. 2d 895 (1988). Instruction D-11, which was also refused by the trial court, defines "willful" and intent." This Court has specifically stated that trial courts need not grant defendant's instructions defining "willful," as that definition is a matter of interpretation for the jury. *Ramon v. State*, 387 So. 2d 745, 751 (Miss. 1980). Instruction S-1 provided the jury with a correct definition of "intent" and trial courts are under no obligation to grant cumulative instructions. *Medley v. State*, 600 So. 2d 957, 962 (Miss. 1992). Gollott's D-12 instruction was given to the jury during deliberations. Gollott does not argue that the timing of the submission was wrong, only that the instruction should have been given. It was. There is no error here.

### 7) DID THE TRIAL COURT ERR IN FAILING TO GRANT D-10, THE REQUESTED INSTRUCTION ON ACCIDENT?

¶38. This issue confronts the legal significance of Gollott's attempted suicide as a mitigating factor in this case. Gollott argues error in that the trial court denied his instruction on accident. Gollott argues that their theory of the case was that Gollott accidentally killed Diane while Gollott attempted suicide. Gollott further asserts that denial here was reversible error. *See Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990).

¶39. The State counters that excusable homicide arises only "when committed by accident and misfortune in doing any lawful act by lawful means." Miss. Code Ann. § 97-3-17 (1994). The State argues that suicide is unlawful at common law. *See, e.g.*, *Commonwealth v. Mink*, 25 Am. Rep. 109, 114-15 (Mass. 1877). Mississippi codified common law crimes as punishable offenses. See Miss. Code Ann. § 99-1-3 (1994). Suicide is a common law offense.[2] Attempted suicide is also unlawful, under the statute making criminal attempts unlawful. Miss. Code Ann. § 97-1-7 (1994). The State argues the statutes read together eliminate the excuse of defense for an attempted suicide.

¶40. Gollott presented much evidence to demonstrate his motivation for attempting suicide: Gollott stated that he was despondent to the point of suicide on the night in question; he asked Diane to shoot him with his pistol; he had recently lost a good friend, and had significant financial and physical troubles. That night, Diane refused to allow Gollott to move in with her and Gollott claimed Diane told him that she would not take care of him.

¶41. Nevertheless, Gollott's admission that Diane was shot in his attempt to commit suicide constitutes an unlawful act.[3] The defense of accident is not applicable, since Gollott was attempting an unlawful act, resulting in the death of Diane. Consequently, Gollott's instruction is an incorrect statement of the law, which the trial court was under no obligation to grant. *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990). This issue is without merit.

8) WAS THE DEFENDANT DENIED HIS RIGHT TO CONFRONT HIS ACCUSERS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE III, SECTION 26 OF THE MISSISSIPPI CONSTITUTION?

¶42. There are three assertions of error in this issue. First, Gollott argues some of Helena Fuller's testimony is hearsay. Helena Fuller testified that she began to closely observe Diane's apartment as a result of her conversation with Diane. Gollott argues that this conversation was inadmissible hearsay. Accordingly, its admission violated the Sixth Amendment to the United States Constitution. *Ohio v. Roberts*, 448 U.S. 56, 64-66, 100 S. Ct. 2531, 2537-39, 65 L. Ed. 2d 597, 606-08 (1980); *see also Balfour v. State*, 598 So. 2d 731, 750 (Miss. 1992) (holding inadmissible hearsay admitted constitutes reversible error).

¶43. On the merits for hearsay, this Court requires an indicia of reliability for such testimony, following federal requirements. *Stoop v. State*, 531 So. 2d 1215, 1221 (Miss. 1988) (citing *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S. Ct. 2531, 2538-39, 65 L. Ed. 2d 597, 607 (1980)). The trial court instructed Fuller to testify only to what she did as a result of her conversation with Diane. Accordingly, Fuller did not testify as to what Diane said, but only its effect. Therefore, Fuller did not testify as to hearsay. *See Gayten v. State*, 595 So. 2d 409, 414 (Miss. 1992). Also, this Court has held that if statements are introduced for the purpose of explaining why the declarant had fear, then the statement is not hearsay. *Knight v. State*, 601 So. 2d 403, 406 (Miss. 1992). Also, Diane's statements are questions as to whether Fuller would look over Diane's apartment. Inquiries do not assert anything. *Gayten*, 595 So. 2d at 414.

¶44. Second, Gollott argues that the jury should not have heard threats from Gollott to Diane, as related by Diane to Lonnie Hebert, an employee of Gollott and Diane. Hebert testified to a conversation with Gollott that (1) he told Gollott that (2) Diane had told him that (3) Gollott had threatened her, concerning her work schedule. Gollott objects to this statement on hearsay and relevancy.

¶45. Hebert's statements concerning what Diane told him Gollott said is harmless error, because the testimony was cumulative. *Jones v. State*, 606 So. 2d 1051, 1057 (Miss. 1992). Hebert also testified that Gollott made the identical statements concerning a threat made to Diane to Hebert himself, without objection. As a result, testimony on what Diane said is cumulative, and the hearsay question is at best harmless error.

¶46. Third, this issue concerns not the admission, but the failure to admit a piece of evidence. Gollott wished to have the tape of his confession played at trial, to show the extremely upset and remorseful demeanor he had, in an effort to show he did not intentionally kill Diane, and that it was an accident.

¶47. It is important to note that the State used no part of the taped interview at the trial, at all. Our caselaw states that the defendant is barred from introducing a statement made by the defendant immediately after the crime, if it is self-serving, and if the State refuses to use any of it. *Tigner v. State*, 478 So. 2d 293, 296 (Miss. 1985); *Jones v. State*, 342 So. 2d 735, 736-37 (Miss. 1977). This assignment is without merit.

9) DID THE TRIAL COURT JUDGE ERR IN REFUSING TO RECUSE HIMSELF?

¶48. Both through pre-trial motions, and the trial itself, Gollott asserted that the trial judge should have recused himself. He asserts that the trial judge had been friends with him and his family. In addition, Gollott asserts that members of his family have given the trial judge campaign contributions.

¶49. Gollott argues that the trial judge became sensitive to his relationship with Gollott, when Diane's family allegedly criticized him. As a result, Gollott argues that the judge allegedly began hearing motions telephonically, scheduling motions at the end of the day, and during breaks in other cases. Gollott argues these actions indicate the case began to take special significance with the trial judge.

¶50. In addition, the trial judge drafted instructions, later withdrawn by the judge, which would deny Gollott any defense in this case. The trial judge did deny Gollott the defense of accident. Gollott also argues that the trial judge had an *ex parte* discussion with the prosecutor concerning a peremptory instruction. Gollott's assertion fails to demonstrate that the trial judge talked to the prosecutor *ex parte*. The trial judge states he asked the prosecutor to check the law with the Attorney General's office "during the course of the last time." Later, the trial judge states that Mrs. Nicholson, defense counsel, was present.

¶51. Gollott argues the general standard for recusal, as given in *Cantrell v. State*, 507 So. 2d 325, 328 (Miss. 1987). The standard is whether the judge has sufficient connections with parties or preconceived opinions regarding a case so that he could not fulfill the role of a judge in deciding it. *Cantrell*, 507 So. 2d at 328.

¶52. The problem in this case is that Gollott fails to develop the factual basis for a motion to recuse. He fails to state or present in the record which members of Gollott's family had connections with the judge, or the timing and amount of any campaign contributions between the judge and Gollott's family. He fails to develop the timing or content of any accusations leveled against the judge by Diane's family. Gollott fails to show how telephonic motions, or motions scheduled while a jury is meeting, are unusual.

¶53. This Court has stated that parties must "apprise itself" of information which would require a judge's recusal, in a case concerning recusal of a justice of this Court. *Ryals v. Pigott*, 580 So. 2d 1140, 1175 (Miss. 1990), *cert. denied*, 502 U.S. 940, 112 S. Ct. 377, 116 L. Ed. 2d 328 (1991). More to the point, other courts have stated that "mere conclusory allegations" do not warrant recusal. *State v. Brown*, 546 So. 2d 1265, 1272 (La. Ct. App. 1989). Louisiana requires supporting factual assertions to show bias or prejudice, to support a motion for recusal. *Brown*, 546 So. 2d at 1272.

¶54. This Court cannot review a basis for recusal, in that no facts are present to develop the extent of the judge's interests in this case. This assignment of error lacks merit.

   10) WAS THE TRIAL FUNDAMENTALLY UNFAIR UNDER CUMULATIVE ERROR ANALYSIS?

¶55. Gollott cites several alleged errors in this case, plus additional allegations of error, to show a level of cumulative error sufficient to reverse this case. Cumulative error may cause reversal of a case where each incident taken alone would not. *See Inman v. State*, 515 So. 2d 1150, 1154 (Miss. 1987); *see also United States v. Canales*, 744 F.2d 413, 430 (5th Cir. 1984).

¶56. To this end, Gollott presents a list of errors which are either addressed in his brief, or not objected to at trial. The Court has carefully reviewed these assertions and holds that there was no reversible error with either separately or cumulatively.

¶57. This Court concludes that no individual error assigned was reversible, and that taking the facts of this case as a whole, the defendant was not denied a fair trial. Therefore, the conviction and sentence is affirmed, but this Court notes that this appeal was permitted under *Gollott v. State*, 646 So. 2d 1297

(Miss. 1994) after death of defendant.

**¶58. CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN YEARS WITH THREE YEARS SUSPENDED MAKING A TOTAL OF TWELVE YEARS AFFIRMED.**

**PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION. SULLIVAN, P.J., NOT PARTICIPATING.**

**DAN LEE, CHIEF JUSTICE, DISSENTING:**

¶59. Under the facts of this case, Gollott was entitled to have the jury instructed as to his theory that he accidently killed Diane. Because I believe that the trial court committed reversible error in refusing to grant Gollott's D-10 Jury Instruction (Exhibit "A"), I respectfully dissent.

**I.**

¶60. It has long been a fundamental tenet of our law that "[t]he defendant is entitled to have an instruction on his theory of the case." *Young v. State*, 451 So. 2d 208, 210 (Miss. 1984), *cert. denied*, 469 U.S. 860, 105 S. Ct. 192, 83 L. Ed. 2d 125 (1984), quoting *De Silva v. State*, 91 Miss. 776, 45 So. 611 (1908). Gollott's theory of the case was that he accidentally shot Diane, causing her death. This was Gollott's only defense and the trial judge's refusal to give D-10 had the same effect as granting a directed verdict for the State as to Gollott's guilt. *See Turner v. State*, 573 So. 2d 1340, 1343 (Miss. 1990) (There is no directed verdict of guilt in criminal cases).

¶61. Miss. Code Ann. § 97-3-17 (1994) defines excusable homicide as:

The killing of any human being by the act, procurement, or omission of another shall be excusable:

(a) When committed by **accident** and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;

(b) When committed by **accident** and misfortune, in the heat of passion, under any sudden and sufficient provocation;

(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.

(emphasis added).

¶62. It certainly appears from the facts in the record that the jury could have found that Gollott accidentally shot Diane during the scuffle that arose during Gollott's attempt to take his own life in the heat of passion. The testimony indicates that on the night of her death, Diane and Gollott discussed his precarious financial condition and that Diane told Gollott that she loved him, but not enough to take care of him. Gollott testified that he went to his truck, got his gun and went back into Diane's apartment. Gollott asked Diane to shoot him. Gollott testified that Diane told him not to be stupid. Subsequently, a heated conversation ensued and Gollott took his gun with his left hand, cocked it, and held it to his **own** head. At this point, Gollott testified, Diane made a motion, stumbled and caused him to accidentally discharge the pistol.

¶63. Based upon this testimony it is entirely possible that the shooting was accidental, and thus, excusable under Miss. Code Ann. § 97-3-17 (1994). Gollott's testimony certainly could support a finding by the jury that the shooting was accidental and that it occured in the heat of passion. Accordingly, this testimony, if believed by the jury, would have supported Gollott's accident theory.

## II.

¶64. The majority cites **In re Joseph G.**, 667 P. 2d 1176, 1178-79 (Cal. 1983), in its opinion and notes "although suicide and attempted suicide [are] common law crime[s], most states today attach **no** criminal liability."**Gollott v. State**, 91-KA-00511-SCT, slip op. at 19 (emphasis added). The Mississippi Legislature has clearly not attached criminal liability to suicide or attempted suicide. But see Miss. Code Ann. § 97-3-49 (1972) (advising, encouraging, abetting, or assisting another person to commit suicide is proscribed by statute). Therefore, the State's argument that attempted suicide is a common law crime and therefore indictable as at common law is of no moment. See Miss. Code Ann. § 99-1-3(1972). In **State v. Allen**, 505 So. 2d 1024, 1025 (Miss. 1987), when asked by the State to hold that the defendants were guilty under the common law of false pretenses we stated:

> That the actions attributed to these defendants may offend our sense of right and honest dealings is of no moment. **For conduct to subject one to the state imposed sanctions of fine or imprisonment, that conduct must prior to the fact have been declared unlawful by the positive law of this state**. **Stewart v. State**, 95 Miss. 627, 49 So. 615 (1909). It is no answer to say that these defendants may have committed an offense indictable as at common law, see M.C.A. § 99-1-3(1972); **State Ex Rel. Maples v. Quinn**, 217 Miss. 567, 64 So. 2d 711, 712 (1953), . . . .

(emphasis added).

¶65. Clearly, under our case law the State's position that Gollott was not entitled to D-10 because the accident occurred while Gollott was attempting to perform an unlawful act is untenable. Attempted suicide has not been declared unlawful by the positive law of the State of Mississippi. In fact the legislature has addressed the subject of suicide but has not taken the opportunity to proscribe attempted suicide or suicide. See Miss. Code Ann. § 97-3-49 (1972). If the legislature desires to make attempted suicide a criminal matter then it should. However, it is not this court's province to create crimes and then punish them. **Howell v. State**, 300 So. 2d 774, 781 (Miss. 1974).

¶66. In the case sub judice, the evidence was such that the jury could have easily have found that Diane was shot accidentally, i.e., Diane had powder stipling on the back side of her hand inconsistent with defensive wounds, and the weapon had a light trigger pull, thus supporting Gollott's claim that the gun accidentally discharged. Likewise, the record is replete with other testimony that would allow the jury to determine that the shooting was indeed accidental. Therefore, it was incumbent upon the judge to grant Gollott's instruction on his theory of the case. **Heidel v. State**, 587 So. 2d 835, 842 (Miss. 1991). While one who attempts suicide may certainly be hospitalized for observation and treatment, there are no statutory penalties imposed upon such individuals for attempting suicide. Accordingly, I would hold that the trial judge's refusal of D-10 was reversible error.

1. Gollott died on November 16, 1993, subsequent to his appeal. On motion to dismiss filed by the Attorney General, this Court, changing its procedure, permitted this appeal to go forward. *Gollott v.*

*State*, 646 So. 2d 1297, 1304-05 (Miss. 1994).

2. Cases have held that the accidental killing of another during an attempted suicide is at least manslaughter. *Dugan v. Commonwealth*, 333 S.W.2d 755, 756 (Ky. Ct. App. 1960) (holding accidental killings of another person, in course of attempt to commit suicide, is criminal homicide amounting at least to voluntary manslaughter); *State v. Levelle*, 13 S.E. 319, 320-21 (S.C. 1891) (holding killing of another during attempted suicide is murder under transferred intent theory, where suicide is felony in state) overruled on unrelated grounds, *State v. Torrence*, 406 S.E.2d 315, 328 (S.C. 1991); see *also Commonwealth v. Mink*, 25 Am. Rep. 109, 115 (Mass. 1877) (holding suicide as *malum per se* unlawful at common law concerning killing of another during attempted suicide, using transferred intent theory developed in Mississippi). But see *In re Joseph G.*, 667 P.2d 1176, 1178-79 (Cal. 1983) (holding in suicide pact case that although suicide and attempted suicide was common law crime, most states today attach no criminal liability to those who attempt suicide).

3. Unlawful acts are crimes or misdemeanors. *Cutrer v. State*, 207 Miss. 806, 814, 43 So.2d 385, 388 (1949). This Court stated in 1953 that the state could prosecute common law crimes. *State ex rel Maples v. Quinn*, 217 Miss. 567, 571, 64 So. 2d 711, 712 (1953). Without overruling *Maples*, this Court stated that the State may not punish a defendant for a common law crime. *State v. Allen*, 505 So. 2d 1024, 1025 (Miss. 1987). However, *Allen* also stands for the proposition that common law offenses fall only where there is a statute delineating the elements of that common law offense. *Allen*, 505 So. 2d at 1025 (stating "[o]ur legislature has entered the field and prescribed the elements of the criminal offense of false pretense, displacing any common-law notions of such a crime.").

The legislature has not delineated or prescribed the elements of attempted suicide. As such, even under *Allen*, this Court is free to label attempted suicide an unlawful offense, since the legislature has not dealt with this offense.

Assuming that *Allen* precludes prosecution for attempted suicide, Gollott's display of a pistol, and his heated request for Diane to shoot him, after his repeated threats against Diane, constitutes a violation of Miss. Code Ann. § 97-3-107 (1994 rev.) (violation of statute arises when person makes "credible threat, with the intent to place that person in reasonable fear of death or great bodily injury."). This unlawful act would also preclude accident as a defense here.