IRVING, J.,
for the Court.
¶ 1. Marcellus Hurt was indicted and convicted of taking possession of or taking away a motor vehicle belonging to Dorothy Jenkins in violation of Miss.Code Ann. § 97-17-42 (Supp.1999). He was sentenced to serve five years in the custody of the Mississippi Department of Corrections with one and a half years suspended and three and a half years to serve. Three issues are raised on appeal of that conviction and sentence. Those issues, taken verbatim from his appeal brief, are:
A. THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY CONCERNING A POLICE REPORT.
B. THE COURT ERRED IN GRANTING THE STATE’S MOTION IN LIMINE, DENYING THE DEFENDANT THE RIGHT TO CROSS EXAMINE THE POLICE OFFICER CONCERNING A STATEMENT MADE BY THE DEFENDANT TO LAW ENFORCEMENT OFFICERS.
C. THE COURT ERRED IN DENYING JURY INSTRUCTION D-l, THE PEREMPTORY INSTRUCTION.
Finding no reversible error, we affirm.
Facts
¶ 2. The facts, according to the State’s proof, are as follows: Alan Dunigan, a member of the Tate County Sheriffs Department, was on routine patrol in the town of Senatobia at about 2:30 a.m. on the morning of August 19, 1998. ' He observed what appeared to him to be suspicious behavior on the part of the driver of a white Buick and the driver of a blue mini van. He followed both vehicles for a short distance and eventually stopped the white Buick which was being driven by Hurt. There was an individual in the passenger seat of the car.
¶ 3. Dunigan noticed that the Buick had no steering wheel and that the steering column was damaged on the side opposite the key insertion device. Dunigan also saw broken glass on the back seat and a shattered rear window on the passenger side of the automobile. He radioed an inquiry to dispatch as to whether the Buick had been reported stolen. He received a response that there had been no report of the car being stolen. The vehicle had a Northwest Community College parking decal, so Dunigan contacted Northwest’s campus police and made the same inquiry. Their initial response was also that there had been no report of the vehi *1104 cle being stolen. Dunigan asked the campus police to perform a check of the decal number to determine to whom the decal had been issued. In the meantime, Duni-gan placed Hurt and his passenger under arrest. After Dunigan took Hurt and his passenger into custody, but while he was still on the roadside where he had stopped the vehicle, he received word that the car had just been reported stolen to the campus police. The case was turned over to the Northwest campus police. Hurt gave a self-serving and exculpatory statement the following day.
¶4. Jacova Jenkins was a student at Northwest Community College in Senato-bia. His mother, Dorothy Jenkins, was the owner of the white Buick being driven by Hurt. Jacova used the car during the week while he lived on campus. Tina Davidson, also a student at Northwest and a personal friend of Jacova, saw the car being driven away from Jacova’s dormitory parking lot at around 2:30 a.m. on the morning in question. She felt certain that Jacova would not be out that time of morning, so she called him. When Jacova answered the phone, she told him what she had seen.
¶ 5. Jacova testified that he received a telephone call from Tina Davidson between 2:30 and 3:00 a.m. informing him that she saw the car being driven away from his dormitory. He went outside and discovered that the car was indeed missing from the parking lot where he had left it. He then dressed and went immediately to the campus police and reported the theft. Ja-cova did not know Hurt and did not give Hurt permission to drive the car that morning, or any other time.
¶ 6. A1 Dodson, the night supervisor with Northwest campus police, was on duty during the early morning hours of the day in question. He was working a shift that began at 7:00 p.m. and ended at 3:00 a.m. At approximately 2:30 a.m., he received a radio call from the sheriffs office inquiring whether there had been any report of a white Buick having been stolen on campus. Dodson responded that there had been no such report. He was asked to check the number on the Northwest parking decal on the Buick to find out to whom it had been issued. Dodson learned that the decal had been issued to Jacova Jenkins.
¶ 7. A short time later, Jacova came into the office to report the theft of the car. Dodson was the individual to whom Jacova spoke. Dodson directed campus patrolman Johnny Threatt to prepare a written report of Jacova’s complaint. Dodson was provided a copy of the offense report while he was on the stand. He testified that the report contained a notation at the top of the form that Jacova came into the office and reported the theft at 2:40 a.m. and a notation at the bottom of the form that the report was prepared at 2:50 a.m. Counsel for Hurt objected that it was hearsay for Dodson to testify about the contents of the report when Dodson had not actually prepared the report. The court overruled Hurt’s objection and held that the report was being offered as a' business record exception to the hearsay rule.
¶ 8. At the close of the State’s case-in-chief, Hurt moved for a directed verdict of acquittal on the ground that the State had failed to prove each and every single element of the crime charged beyond a reasonable doubt. The motion was denied. Hurt rested without testifying or presenting any witnesses in his own behalf.
Analysis of Issues Presented

I. Hearsay and the police offense report

¶ 9. Hurt contends that the testimony of Dodson regarding the contents of the police offense report prepared by Threatt was blatant hearsay and a violation of his constitutional rights. He argues that in allowing Dodson to testify regarding the contents of the report when he did not prepare it was a violation of M.R.E. 803(6) which provides as follows:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness: *1105 (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term “business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.(emphasis added).
¶ 10. In Peterson v. State, 671 So.2d 647, 655-56 (Miss.1996), the Mississippi Supreme Court announced that the standard of review for the admissibility of evidence rests within the discretion of the trial court, but that a determination of whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility is also necessary. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the appellate court applies a substantially broader standard of review. However, a denial of a substantial right of the defendant must have been affected by the court’s eviden-tiary ruling. Furthermore, the trial court’s discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs. Id. Hurt makes no claim of prejudice, and there is nothing in the record to indicate that Hurt was prejudiced in any way by this testimony.
¶ 11. Hurt cites the case of Harrison v. State, 722 So.2d 681 (Miss.1998), and its holding that it was error for police officers to testify about statements given them by others when the statements were introduced for the truth of the matter asserted. He alleges that the same is true in the case at bar with regard to Dodson’s testimony about the notation of the time of Jacova’s report to the campus police. That too, alleges Hurt, was introduced for the truth of the matter asserted and constitutes inadmissible hearsay.
¶ 12. Hurt concedes that Rule 803(6) provides that either the custodian of records, or any other qualified witness may testify about business records and records of regularly conducted activity, such as the police offense report. He charges that the State failed to produce the testimony of the custodian or any other qualified witness. We disagree.
¶ 13. We find that Dodson was a qualified witness under the provisions of M.R.E. 803(6). The record is clear that Dodson was present at the time that Jaco-va came in to report the theft of Jacova’s automobile. The record is also clear that Dodson, who was the shift supervisor, took Jacova’s oral complaint and then instructed Threatt to prepare a written offense report. Finally, the record clearly indicates that just prior to the time Jacova appeared to report the theft of his automobile, Dodson had spoken with Deputy Du-nigan about the possible theft of the very same vehicle and had performed a check of the campus parking decal to determine ownership. Hurt perhaps would have a point here if the source of the information in the report regarding the time had been Jacova, an informant not acting within the course and scope of the activities of the campus police department. See comment to Rule 803(6). However, the fact that the report was made pursuant to Jacova’s complaint does not make Jacova the source of the information about the time indicated in the report. Thus, Dodson was not precluded from testifying about the time indicated on the report since Jacova was not the source of the time contained in the report. Had the prosecutor sought to use *1106 the report for information supplied by Ja-cova only, Hurt’s objection would have had merit. Since Dodson had personal knowledge about the time that was shown on the offense report, this testimony fell squarely within the meaning of M.R.E. 808(6) and did not constitute inadmissible hearsay. This issue has no merit.

II. Motion in limine restricting testimony regarding statements Hurt made to police

¶ 14. After his arrést, Hurt gave a statement to the director of the campus police. The statement was self-serving and exculpatory in nature and implicated Jaeova in the theft of Jacova’s mother’s automobile for insurance purposes. Prior to the mother being called as a witness, the State made a motion in limine to prevent Hurt from bringing out the terms of any statements which Hurt had given to law enforcement officers. The trial court granted the State’s motion, ruling that Hurt’s statement alone would not be allowed at that point in the trial. However, the court did indicate in its ruling that should' Hurt decide to testify he would be free to testify about those matters. It was the State’s position that if it did not use any portion of Hurt’s statement, that Hurt could not bring out any portion of his statement through any other witness. The State did not use Hurt’s statement and Hurt did not testify.
¶ 15. Hurt concedes that the cases of Jones v. State, 342 So.2d 735 (Miss.1977), Tigner v. State, 478 So.2d 293 (Miss.1985) and Nicholson on Behalf of Gollott v. State, 672 So.2d 744 (Miss.1996), relied on by the State, stand for the proposition that a defendant is barred from introducing a statement made by said defendant immediately after the crime, if it is self-serving, and if the State refuses to use any of it. He argues that this proposition violates his rights to a fair and impartial trial. We disagree. This issue is without merit.

III. Denial of motion for directed verdict and refusal to grant peremptory instruction

¶ 16. At the close of the State’s case-in-chief, Hurt moved for a directed verdict of acquittal. The motion was denied. At the close of all evidence Hurt introduced peremptory jury instruction D-l. It was refused.
¶ 17. Hurt contends that after considering all of the testimony, the court should have granted his motion for a directed verdict. Hurt fails to direct this Court’s attention to any aspect of the record that supports this contention. Our review of the record indicates there was substantial evidence in support, of the verdict of such quality and weight that reasonable and fan-minded jurors in the exercise of impartial judgment might have reached different conclusions. We therefore, affirm that verdict. This issue has no merit.
¶ 18. THE JUDGMENT OF TATE COUNTY OF CONVICTION OF UNLAWFULLY TAKING POSSESSION OF A MOTOR VEHICLE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE LAST ONE AND ONE-HALF, YEARS SUSPENDED PENDING GOOD BEHAVIOR, AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $326 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST TATE COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., concur.